IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| MARGARET WIKE, on behalf herself and all others similarly situated, | ) CASE NO. _____ ) ) |
| Plaintiff, | ) CLASS ACTION ) |
| vs. | ) JURY TRIAL DEMANDED ) |
| VERTRUE, INC. f/k/a MEMBERWORKS, INC., | ) ) ) |
| Defendant. | ) |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiff, on behalf of herself and all others similarly situated, alleges as follows:

### INTRODUCTION

1. Defendant Vertrue (formerly known as "MemberWorks, Inc.") purports to sell membership programs that provide discounts on various consumer goods and services. Plaintiff alleges that Vertrue forms partnerships with third parties such as financial institutions and retailers in order to obtain access to confidential consumer billing data. Vertrue then exploits this consumer billing data to market its membership programs and bill consumers for Vertrue membership programs that consumers do not consent to pay for or receive. Plaintiff further alleges that Vertrue hinders consumers' ability to contact the company and cancel the unauthorized billing.

### JURISDICTION AND VENUE

2. The Court has jurisdiction over the action, which alleges violations of the federal Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq., and the federal declaratory relief statute, 28 U.S.C. §§ 2201 et seq., pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m.

Case 3:06-cv-00204   Document 1   Filed 03/14/06   Page 1 of 16 PageID #: 1

The Court has supplemental jurisdiction over Plaintiff's state law claims for violations of the Tennessee Consumer Protection Act, Tennessee Code Annotated §§ 47-18-104 et seq., conversion, and unjust enrichment, pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c). A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of occurred in or emanated from this District, and Defendant conducts business in this District.

## PARTIES

4. Plaintiff Margaret Wike is a resident of Clarksville, Tennessee.

5. Defendant Vertrue, Inc., formerly known as Memberworks, Inc. ("Vertrue"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Stamford, Connecticut.

## SUBSTANTIVE ALLEGATIONS

6. "Cramming" is the practice of imposing unauthorized, misleading, or deceptive charges for products or services to consumers' telephone bills, credit card bills, or bank account statements.

7. Vertrue describes itself as an "integrated marketing services company." Vertrue markets and sells "subscription-based discount programs" that purport to provide savings on various consumer goods and services.

8. Vertrue runs one of the largest and most successful cramming operations in the United States. For Fiscal Year 2005, Vertrue reported that it had 6.3 million customers and $579.8 million in annual revenue.

9. Vertrue has been sued by the Attorneys General of California, Florida, Minnesota, Nebraska, New York, Ohio, Pennsylvania and Texas in connection with allegations that it charges consumers for membership programs without consumers' authorization and engages in deceptive and misleading marketing practices. The Better Business Bureau reports a pattern of complaints about Vertrue for unauthorized billing. A simple Internet search pulls up hundreds of consumer complaints about Vertrue/MemberWorks.

10. The membership programs that Vertrue purports to market and sell have names such as 24 Assistance, 24 Protect Plus, MWI At Home, BusinessMax, Card Protect Plus, Connections, Essentials, Galleria, HomeWorks Plus, Lifestyle Rewards, MainStreet Savings, Passport To Fun, Premier Health Plus, Privacy Matters, Simple Escapes, Simply You, Today's Escapes, Travel Source, Value Max, and Your Savings Club. Vertrue's products purport to provide consumers with coupons for discounts on the purchase of consumer goods and services.

11. There is no significant market or demand for Vertrue's products. Vertrue's success as a business enterprise depends entirely on Vertrue's ability to "cram" consumers with charges for Vertrue products that consumers have neither requested nor authorized.

12. To obtain confidential consumer billing information, Vertrue contracts with financial institutions, retailers, web-based "e-commerce" businesses, televised "infomercial" marketers, and other third parties willing to supply it with consumer billing data. Vertrue enters into partnerships with these third parties pursuant to which Vertrue shares a portion of the proceeds of Vertrue's cramming activity with the third party in exchange for receiving access to consumer billing data in the third party's possession.

13. Vertrue markets and purports to sell its membership programs through the corporate partners who provide Vertrue with access to consumer billing data. Among other

things, Vertrue lures consumers into its membership programs by promising "cash back" discounts and free gift cards at popular retailers.

14. Vertrue charges consumers' credit cards or withdraws money from their bank accounts on a monthly or annual basis, at regular, recurring intervals. Monthly charges typically range from $9.95 to $39.95. Annual charges range from $60.00 to $140.00. All charges assessed by Vertrue for its membership programs are purportedly authorized in advance to recur at substantially regular intervals.

15. Consumers complain that Vertrue hinders their efforts to cancel their purported membership programs. Among other things, consumers complain that they are unable to reach Vertrue customer service personnel; that they are subjected to excessive "on hold" periods when they call Vertrue's 1-800 numbers; that Vertrue's customer service personnel, when consumers are able to reach them, refuse to provide consumers with any information about how they were enrolled in Vertrue's membership program or how Vertrue obtained their confidential billing information; and that Vertrue's customer service personnel are rude and abusive.

### Plaintiff's Experiences

16. While reviewing her March 2005 bank account statement, Plaintiff Margaret Wike discovered a charge of $19.95 to "Galleria USA." At that time, Plaintiff Wike did not question the charge because she mistakenly thought it was for an online service that she had ordered.

17. When the "Galleria USA" charge appeared on her April 2005 bank account statement, Plaintiff Wike called the phone number listed next to the "Galleria USA" entry on her bank account statement. The agent with whom Plaintiff spoke said the charge was for a membership program that provided coupons and that the membership materials had been mailed

to Plaintiff. Plaintiff said that she had not authorized the charges and had never received anything from "Galleria USA." The agent offered to re-send the membership materials to Plaintiff, but Plaintiff refused. Instead, Plaintiff asked to be cancelled and asked for a refund of the money taken from her bank account, both of which the agent agreed to do.

18. Plaintiff Wike did not receive the promised refund and she continued to incur unauthorized charges to "Galleria USA." As a result, Plaintiff continued to call to complain. In approximately July or August 2005, Plaintiff spoke with a "Galleria USA" agent who agreed to cancel Plaintiff's account and refund the money improperly withdrawn from Plaintiff's bank account. The agent further said that she would send to Plaintiff's home address information regarding how Plaintiff had been enrolled in Defendant's membership program. Plaintiff never received any such information. Moreover, despite her demand to be cancelled, Plaintiff continued to incur unauthorized charges and did not receive any refunds to her bank account.

19. Plaintiff called "Galleria USA" for at least the third time. Plaintiff was put on hold and then disconnected. Plaintiff called back immediately and was funneled into an automated system, which enabled Plaintiff to cancel her purported "Galleria USA" membership. After she canceled, Plaintiff called the "Galleria USA" phone number again to obtain a refund. Plaintiff spoke with a customer service agent who agreed to credit Plaintiff's bank account two months worth of charges, but otherwise refused to provide Plaintiff with any information and refused to transfer Plaintiff to the agent's supervisor.

20. In all, Plaintiff was charged $1.00 in February 2005 and $19.95 from March through September 2005. Except for two months of charges that she was refunded, Plaintiff has not been fully reimbursed for the money that Defendant improperly withdrew from Plaintiff's bank account.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of herself and all other similarly situated persons defined as follows:

> All persons from whose accounts Vertrue initiated an electronic fund transfer for one or more Vertrue membership programs from the period of March 14, 2003, to the present.

Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, and employees; Defendant's legal representatives, heirs, successors, and assigns; and any Judge to whom this case is assigned and his or her immediate family.

22. **Numerosity of the Class—Fed. R. Civ. P. 23(a)(1).** Class members are so numerous that their individual joinder herein is impracticable. Plaintiff estimates that there are thousands of members in the proposed Class. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from information and records in Defendant's possession and control.

23. **Existence and Predominance of Common Questions of Law and Fact—Fed. R. Civ. P. 23(a)(2), 23(b)(3).** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a. Whether Vertrue obtained valid authorization from all Class members to electronically withdraw funds from Class members' bank accounts for Vertrue's membership programs;

b. Whether the debits from Class members' accounts initiated by Vertrue are "preauthorized electronic fund transfers" within the meaning of 15 U.S.C. § 1693a(9) and § 1693e;

c. Whether Vertrue had a duty under the EFTA to obtain Class members' authorization in writing before debiting their accounts for preauthorized electronic fund transfers;

d. Whether Vertrue had a duty under the EFTA to provide Class members a copy of their written authorization to initiate preauthorized electronic fund transfers from Class members' accounts;

e. Whether Vertrue complied with the requirements of the EFTA in connection with the preauthorized electronic fund transfers Vertrue initiated from Class members' accounts;

f. Whether Vertrue has violated the EFTA with respect to Plaintiff and Class members;

g. Whether Vertrue's acts and practices deceive or have the capacity to deceive consumers;

h. Whether Vertrue has violated Tennessee's Consumer Protection Act, Tennessee Code Annotated §§ 47-18-104, et seq.;

i. Whether Vertrue converted Class members' money;

j. Whether Vertrue has been unjustly enriched.

24. **Typicality—Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class because, as with all other Class members, Vertrue initiated electronic fund transfers from Plaintiff Wike's account without obtaining Plaintiff's authorization in writing or providing her with a copy of that authorization.

25. **Adequacy of Representation—Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

26. **Superiority—Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared with the burden and expense that would be entailed by individual litigation of their claims against Vertrue. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

27. In the alternative, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a. The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## **FIRST CAUSE OF ACTION**

**(For Violations Of The Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 et seq.)**

28. Plaintiff Wike, on behalf of herself and the Class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

29. Plaintiff Wike maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2)

30. Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(5)

31. Defendant engaged in "preauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(9), by debiting Plaintiff's bank account on a monthly basis.

32. Defendant engaged in "unauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting Plaintiff's bank account without Plaintiff's actual authorization and without providing Plaintiff any benefit.

33. Section 1693e(a) of the EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."

34. As alleged herein, Defendant failed to comply with its duties under the EFTA because, during the Class period, Defendant initiated electronic fund transfers from Plaintiff's and Class members' accounts without obtaining Plaintiff's and Class members' authorization in writing and without providing Plaintiff and Class members' with a copy of their authorizations when made.

35. Defendant further failed to comply with the EFTA in that, insofar as Defendant purports to obtain consumer consent through telephonic tape-recording or electronic means, Defendant failed to comply with the requirements of the Electronic Signatures In Global And National Commerce Act, 15 U.S.C. § 7001 et seq., because Defendant did not obtain from Plaintiff and Class members valid "electronic signatures" within the meaning of 15 U.S.C. § 7006(5), Defendant did not obtain valid consent from Plaintiff and Class members to provide electronic copies to them of their purported authorizations, and Defendant did not provide to Plaintiff and Class members any copies of their purported authorizations, including in electronic form or otherwise.

36. Furthermore, Defendant failed to maintain procedures reasonably adapted to avoid initiating electronic fund transfers from consumers' debit accounts when Class members misidentified their method of payment as a credit card and therefore Defendant was not entitled to debit Class members' accounts in reliance on Class members' misidentification.

37. Accordingly, on behalf of herself and the proposed Class, Plaintiff Wike seeks actual damages, statutory damages, costs of suit, including a reasonable attorneys' fee, and such other relief that the Court deems appropriate, pursuant to 15 U.S.C. § 1693m.

## SECOND CAUSE OF ACTION

### (For Violations Of The Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated §§ 47-18-104 et seq.)

38. Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

39. Plaintiff asserts this claim for relief on behalf of a subclass of consumers who are residents of the state of Tennessee.

40. The TCPA prohibits unfair and deceptive acts or practices.

41. The purposes of the TCPA are, in part (1) to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce; (2) to encourage and promote the development of fair consumer practices; and (3) to declare and provide for means for maintaining ethical standards of dealing between persons engaged in business and the consuming public. The TCPA is to be liberally construed to protect consumers and others from those who engage in deceptive acts or practices. Amendments enacted in 1991 allow for class actions under the TCPA.

42. As set forth herein, Defendant's acts, practices, and conduct violate §§ 47-18-104(a)(5), (12), and (27) of the TCPA in that, among other things, (a) Defendant represented that goods or services have approval, characteristics, uses, or benefits that they do not have; (b) Defendant represented that a consumer transaction confers or involves rights, remedies or

obligations that it does not have; and (c) Defendant engaged in other acts and practices which are deceptive to consumers.

43. Defendant's unfair and deceptive acts, practices, and conduct include, among other things, (1) debiting consumers' bank accounts for Vertrue products that Class members did not order, authorize, or otherwise consent to receive; and (2) hindering consumers' efforts to cancel their unordered membership subscriptions.

44. Plaintiff and Class members seek actual damages, including treble damages, an injunction prohibiting Defendant from continuing in such practices, restitution, disgorgement of all profits obtained from unfair competition, punitive damages, attorneys' fees and costs, and any other relief that the Court deems necessary or proper.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

45. Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

46. Plaintiff asserts this claim for relief on behalf of a subclass of consumers who are residents of the state of Tennessee.

47. Defendant has received, and continues to receive, benefits at the expense of Plaintiff and Class members and it is inequitable for Defendant to retain these benefits.

48. Through its unfair and deceptive conduct, Defendant has unlawfully obtained money from Plaintiff and Class members for unordered and unwanted membership programs

49. Defendant unlawfully has imposed, and continues to impose, charges against Plaintiff's and Class members' bank accounts.

50. As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiff and Class members have paid money to Defendant that they do not owe, and are therefore entitled to restoration of the money they paid to Defendant, along with interest thereon from the date the money was converted by Defendant to the date of judgment.

## FOURTH CAUSE OF ACTION

### (Conversion)

51. Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

52. Plaintiff asserts this claim for relief on behalf of a subclass of consumers who are residents of the state of Tennessee.

53. Vertrue has charged and collected money from Plaintiff and Class members for purported membership programs without Plaintiff's and Class members' authorization. Vertrue has thus converted to its own use property belonging to Plaintiff and Class members,' namely money, without Plaintiff's and Class members' consent. The specific sum of each Class member's money converted by Vertrue is readily identifiable from information and records in Vertrue's possession and control.

54. As a direct and proximate result of Vertrue's unlawful acts and conduct, Plaintiff and Class members were deprived of the use of their money that was unlawfully converted by Vertrue, and are thereby entitled to restoration of their money, along with interest thereon from the date the money was converted by Vertrue to the date of judgment, compensatory damages, and punitive damages.

## FIFTH CAUSE OF ACTION

### (For Declaratory Relief Pursuant To 28 U.S.C. § 2201 et seq.)

55. Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

56. Plaintiff asserts this claim on behalf of the Class.

57. An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiff and Defendant for which Plaintiff desires a declaration of rights.

58. Defendant has withdrawn funds from Plaintiff's and Class members' accounts without Plaintiff's and Class members' authorization or consent.

59. A declaratory judgment is necessary to determine Plaintiff's and Class members' rights in connection with Defendant's unauthorized charges for its purported membership programs, including, among other things, a declaration that Defendant has violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.; a declaration that Defendant has violated the Tennessee Consumer Protection Act, Tennessee Code Annotated §§ 47-18-104 et seq.; a declaration that Defendant withdrew funds from Plaintiff's and Class members' accounts without their authorization or consent; and a declaration that Plaintiff and Class members did not order or consent to receive any products or services from Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, pray for judgment as follows:

a.      For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel of record to represent the proposed Class;

b.      For an order declaring that Vertrue has violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 et seq.;

c.      For an order declaring that Vertrue has violated the Tennessee Consumer Protection Act, Tennessee Code Annotated §§ 47-18-104 et seq.;

d.      For an order enjoining Vertrue's wrongful conduct;

e.      For an order awarding Plaintiff and the Class restitution of all money acquired by Vertrue from Plaintiff and Class members;

f.      For an order awarding Plaintiff and Class members actual and statutory damages, and interest thereon, pursuant to 15 U.S.C. §1693m;

g.      For an order awarding Plaintiff and the Class compensatory and consequential damages in an amount to be proven at trial, together with interest thereon;

h.      For an order awarding Plaintiff and the Class attorneys' fees and costs of suit, including expert witness fees;

i.      For an order awarding pre-judgment and post-judgment interest;

j.      For an order awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Respectfully submitted,

Dated: March 14, 2006

_/s/ Gerald Martin_
Gerald E. Martin (BPR# 20193)
**BARRETT, JOHNSTON & PARSLEY**
217 Second Avenue North
Nashville, Tennessee 37201
Phone: (615) 244-2202
Facsimile: (615) 252-3798

Daniel C. Girard
Allison L. Ehlert
**GIRARD GIBBS & De BARTOLOMEO LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and
Representative Plaintiffs