**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **MARGARET WIKE, on behalf of herself and all others similarly situated,** | ) | **CASE NO. 3:06-0204** |
| | ) | |
| | ) | **Judge Echols/Brown** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CLASS ACTION** |
| | ) | |
| **VERTRUE, INC.** | ) | **JURY TRIAL DEMANDED** |
| **f/k/a MEMBERWORKS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Margaret Wike, on behalf of herself and all others similarly situated, alleges as follows:

## INTRODUCTION

1.      "Cramming" refers to the practice of imposing unauthorized charges on consumer billing statements.  Vertrue, Inc., formerly known as MemberWorks, Inc., is one of the largest and most sophisticated cramming operations in the United States.  Vertrue reported that it had 6.3 million customers and $579.8 million in annual revenue in Fiscal Year 2005.

2.      Vertrue's ostensible business is the sale of membership programs that provide the consumer with access to discounts on various consumer goods and services.  There is no meaningful consumer demand for Vertrue's membership programs.  Vertrue uses coercive and deceptive practices to generate new business.  These practices depend on the misuse of consumer billing data obtained through strategic alliances with major business organizations, the offer of illusory free trial periods, gift cards and other promotions, sending consumers membership

materials disguised as junk mail to prevent them from discovering that they have "agreed" to purchase a discount club membership, the use of "boiler-room" tactics to prevent consumers from cancelling their memberships and many other fraudulent and deceptive business practices.

3. Plaintiff, on behalf of herself and all others similarly situated, alleges claims under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq., the federal declaratory relief statute, 28 U.S.C. § 2201 et seq., the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-104 et seq., and for unjust enrichment and conversion.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over the action, which alleges violations of the federal Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 et seq., and the federal declaratory relief statute, 28 U.S.C. §§ 2201 et seq., pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1693m. The Court has supplemental jurisdiction over Plaintiff's state law claims for violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104 et seq., and for conversion and unjust enrichment, pursuant to 28 U.S.C. § 1367.

5. The Court also has jurisdiction over the action under 28 U.S.C. § 1332. The aggregated claims of the individual members of the proposed Class exceed the sum or value of $5,000,000, and more than two-thirds of the members of the proposed Class, on the one hand, and Defendants, on the other, are citizens of different states.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c). A substantial part of the events and conduct giving rise to the obligations, liabilities, breaches, and/or violations of law complained of occurred in or emanated from this District, and Defendant conducts business in this District.

## PARTIES

7.     Plaintiff Margaret Wike is a resident of Clarksville, Tennessee.

8.     Defendant Vertrue, Inc., formerly known as Memberworks, Inc. ("Vertrue"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Norwalk, Connecticut

## GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

9.     Vertrue describes itself as an "integrated marketing services company." Previously known as "MemberWorks, Inc.," the company changed its name to "Vertrue" in 2004 as part of a "re-branding" effort.  The re-branding effort occurred after several state attorneys general instituted consumer protection lawsuits against the company.

10.    Vertrue markets and sells more than 20 membership programs that purport to provide savings on various consumer goods and services.  For these memberships, Vertrue charges monthly fees that range from approximately $9.95 to $19.95 or annual fees that range from approximately $169.95 to $199.95.

11.    Vertrue claims to secure the consumer's consent to be billed in advance for charges that will recur at regular intervals.  Vertrue never sends the consumer a bill requesting authorization for payment.  Vertrue imposes its membership fees directly against consumers' credit cards, debit cards, and bank accounts.

12.    There is no consumer demand for Vertrue's membership programs.  Discount offers are widely available free-of-charge through unsolicited direct mailings, newspapers and periodicals, local retailers and the Internet.  As there is no market for Vertrue's memberships, Vertrue's continued success as a business enterprise depends on its ability to cram consumers with membership charges.

3

13.     Vertrue markets at least 22 membership programs having names such as 24 Assistance, 24 Protect Plus, At Home Rewards, BusinessMax, Card Protect Plus, Connections, Essentials, Galleria USA, Homeworks Plus, Lifestyle Rewards, Main Street Savings, Passport To Fun, Premier Health Plus, Privacy Matters, Privacy Plus, Shopping Essentials, Simple Escapes, Simply You, Today's Escapes, Travel Source, ValueMax, and Your Savings Club.

14.     Vertrue promotes the sale of its products through the offer of trial memberships it describes as "risk-free." According to Vertrue, the way new customers purchase Vertrue products is by accepting an offer of a "free trial" period of membership in one of Vertrue's discount clubs. Vertrue claims that consumers understand that if they cancel within the free trial period, they will incur no obligation, but if they do not cancel within the free trial period, they consent to pay periodic membership fees in perpetuity until they cancel.

15.     Consumers who receive free trial memberships for Vertrue products complain that Vertrue's promotional offers are misleading, in that consumers are not aware that periodic billing will ensue without further authorization from the consumer; that Vertrue makes it impossible to cancel the membership before the expiration of the free trial period; that Vertrue initiates periodic billing before the expiration of the free trial period; that Vertrue initiates periodic billing even if the consumer has cancelled or attempted to cancel the membership; that the purported benefits of free trial membership (typically "gift cards" that can be redeemed at major retailers) cannot be accessed during the free trial period; that membership benefits do not have the characteristics attributed to them by Vertrue; that consumers are unable to determine what membership benefits Vertrue actually offers; that membership benefits are difficult or impossible to access or obtain; that the consumer must pay membership fees to access benefits that were supposed to be available during the free trial period; that membership benefits are not "risk free;"

4

that membership benefits are worthless; that membership benefits cannot be obtained without filling out claim forms and "surveys" or fulfilling other undisclosed and burdensome conditions; that Vertrue does not provide any actual benefits but instead mails consumers a "brochure" designed to look like junk mail with a membership identification number that the consumer must use to access a website with information about membership benefits; that consumers are unable to contact Vertrue without their "membership number;" that Vertrue impedes the reasonable efforts of consumers to obtain their membership number; that consumers are unable to reach Vertrue's customer service personnel to obtain assistance regarding membership benefits; and that Vertrue lacks any of the attributes of a legitimate business organization.

16.    Vertrue's business practices systematically generate thousands of complaints from individuals who state that they have been billed for a Vertrue membership they never heard of; that they have no idea how they came to be charged for the Vertrue membership; that they do not know how Vertrue acquired the consumer's electronic billing data; that they have not authorized or consented to be enrolled in a Vertrue membership; that they have never heard of Vertrue or any of its membership products; that they have not consented to the release of their billing information to Vertrue; that they do not know what the membership program is or what it purports to offer; that they never authorized Vertrue to access their confidential billing information and do not know how Vertrue came into possession of the information; that they are confused by the line item charges for Vertrue programs appearing on their credit card and bank account statements; that they are billed for Vertrue membership programs whether or not they notify Vertrue of their desire to cancel their membership prior to expiration of the free trial period; that their attempts to stop Vertrue's periodic billings were obstructed or disregarded by Vertrue employees or representatives; that their requests for refunds of the money taken by

5

Vertrue were obstructed or disregarded by Vertrue employees or representatives; and that they are forced to close their credit card and bank accounts and open new accounts in order to protect their accounts from Vertrue's unauthorized billing.

17.     Consumers complain that Vertrue's representatives and agents refuse to cancel their unwanted membership programs upon request; refuse to tell the consumer how he or she was enrolled and how Vertrue gained access to the consumer's confidential billing information; refuse to provide the consumer with proof that the consumer consented to enrollment; improperly condition refunds on the customer providing confidential credit or debit card numbers; and terminate billing for one Vertrue membership program while continuing billing for other Vertrue membership programs, despite the consumer's demand that Vertrue cancel all membership billing.

18.     Consumers further report that they have difficulty locating phone numbers they can use to Vertrue to cancel their accounts, that the phone numbers listed next to the Vertrue charges on their credit card and bank statements do not work, that they are subjected to long hold times, that when they do get through to a live agent they are disconnected, that Vertrue fails to staff telephone lines with sufficient personnel to address cancellation call volume, that Vertrue's agents and representatives are rude and unresponsive, and that Vertrue's agents and representatives deliberately "ping-pong" consumers between customer service representatives.

19.     Vertrue has been sued by the Attorneys General of California, Florida, Iowa, Minnesota, Nebraska, New York, and Ohio in connection with allegations that it charges consumers for membership programs without consumers' authorization and engages in deceptive and misleading marketing practices.  As part of its investigation into its recently filed lawsuit, the Iowa Attorney General sent questionnaires to 400 Iowa residents enrolled in Vertrue membership

programs.  Among the questionnaire respondents, 67% indicated that they did not know they were members and/or that they did not authorize Vertrue to charge them.  The Iowa Attorney General reports that, "Most of the rest of the consumers who responded indicated that they had never used their membership, or thought that they had already cancelled.  None of those responding said that they were satisfied members."

20.     The Better Business Bureau gives Vertrue an "unsatisfactory record" "due to a pattern of complaints concerning unauthorized charges to consumers' credit cards."  The BBB's website reports that it has processed a total of 2277 complaints about Vertrue in the last 36 months, including 765 in the last year.  A simple Internet search for "MemberWorks," Vertrue's former corporate name, pulls up hundreds of consumer complaints, including at websites such as www.ripoffreport.com, www.consumeraffairs.com, and www.uspeakout.com.

21.     Vertrue is aware of the widespread consumer complaints against it but makes no effort to remedy or suspend the practices which give rise to the complaints.  Instead, Vertrue continues to perfect and deploy the promotional techniques that give rise to the complaints.  Vertrue also goes to great lengths to impede the efforts of customers to cancel their memberships, as Vertrue has no meaningful "repeat business" or interest in maintaining customer goodwill.  Vertrue occasionally refunds membership fee payments to consumers in an effort to forestall legal or regulatory action.  Typically, Vertrue will offer a partial refund after a protracted and often harrowing sequence of attempts by the consumer to reach company representatives and secure a refund.

22.     Vertrue's business practices are particularly oppressive for persons of limited means.  By placing unauthorized charges on consumer credit cards and bank accounts, Vertrue causes consumers to incur additional finance charges, bounced check and NSF charges.  As a

result of Vertrue's unauthorized debiting of their bank accounts, consumers on fixed incomes report difficulty in making monthly rent payments, child support payments, and other necessary expenditures.

### Plaintiff's Experiences

#### Plaintiff Margaret Wike

23.     While reviewing her March 2005 bank account statement, Plaintiff Margaret Wike discovered a charge of $19.95 to "Galleria USA."  At that time, Plaintiff Wike did not question the charge because she mistakenly thought it was for an online service that she had ordered.

24.     When the "Galleria USA" charge appeared on her April 2005 bank account statement, Plaintiff Wike called the phone number listed next to the "Galleria USA" entry on her bank account statement.  The agent with whom Plaintiff spoke said the charge was for a membership program that provided coupons and that the membership materials had been mailed to Plaintiff.  Plaintiff said that she had not authorized the charges and had never received anything from Galleria USA.  The agent offered to re-send the membership materials to Plaintiff. Plaintiff declined, as she had no interest in a membership in Galleria USA.  Instead, she demanded that her membership be cancelled and the money taken from her bank account refunded, both of which the agent agreed to do.

25.     Plaintiff Wike did not receive the promised refund and Vertrue continued to bill her for Galleria USA.  As a result, Plaintiff continued to call to complain.  In approximately July or August 2005, Plaintiff spoke with a Galleria USA agent who agreed to cancel Plaintiff's account and refund the money improperly withdrawn from Plaintiff's bank account.  The agent promised to send to Plaintiff's home address information regarding how Plaintiff had been

8

enrolled in Defendant's membership program. Plaintiff never received the information. Vertrue continued to bill Plaintiff for Galleria USA and failed to provide any of the promised refunds.

26.     Plaintiff called Galleria USA for at least the third time. Plaintiff was put on hold and then disconnected. Plaintiff called back immediately and was funneled into an automated system, which enabled Plaintiff to cancel her purported Galleria USA membership. After she canceled, Plaintiff called the Galleria USA phone number again to obtain a refund. Plaintiff spoke with a customer service agent who agreed to credit her bank account two months worth of charges, but otherwise refused to provide her with any information and refused to transfer Plaintiff to the agent's supervisor. Plaintiff was subsequently credited for two months of charges that Vertrue had withdrawn from her account.

27.     In all, Plaintiff was charged $1.00 in February 2005 and $19.95 from March through September 2005. Except for two months of charges that she was refunded, Vertrue refused to honor Plaintiff's demand for a refund of the money withdrawn from her bank account. After Plaintiff filed her complaint in this matter, however, Defendant credited Plaintiff's bank account for the balance of the money it had improperly withdrawn.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(2) or (b)(3) on behalf of themselves and all other similarly situated persons. Plaintiff brings this action on behalf of a proposed nationwide Class (the "EFTA Class") defined as follows:

> All persons from whose accounts Vertrue initiated an electronic
> fund transfer for one or more Vertrue membership programs from
> the period of March 14, 2005, to the present.

29.     Plaintiff also brings this action on behalf of a proposed statewide class of Tennessee consumers (the "Tennessee Class") (together with the EFTA Class, the "Class"):

> All Tennessee residents who were billed for one or more Vertrue memberships during the period from March 14, 2003 to the present.

30.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, Defendant's officers, directors, and employees; Defendant's legal representatives, heirs, successors, and assigns; and any Judge to whom this case is assigned and his or her immediate family.

31.     **Numerosity of the Class—Fed. R. Civ. P. 23(a)(1).**  Class members are so numerous that their individual joinder herein is impracticable.  Plaintiff estimates that there are thousands of members in the proposed Class.  The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from information and records in Defendant's possession and control.

32.     **Existence and Predominance of Common Questions of Law and Fact—Fed. R. Civ. P. 23(a)(2), 23(b)(3).**  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.     Whether Vertrue obtained valid authorization from all EFTA Class members to electronically withdraw funds from EFTA Class members' bank accounts for Vertrue's membership programs;

b.     Whether the debits from EFTA Class members' accounts initiated by Vertrue are "preauthorized electronic fund transfers" within the meaning of 15 U.S.C. § 1693a(9) and § 1693e;

10

c.       Whether Vertrue had a duty under the EFTA to obtain EFTA Class members' authorization in writing before debiting their accounts for preauthorized electronic fund transfers;

d.       Whether Vertrue had a duty under the EFTA to provide EFTA Class members a copy of their written authorization to initiate preauthorized electronic fund transfers from EFTA Class members' accounts;

e.       Whether Vertrue complied with its duty under the EFTA to provide reasonable advance notice to consumers of the amount and scheduled date of a transfer when a preauthorized transfer may vary in amount;

f.       Whether Vertrue complied with the requirements of the EFTA in connection with the preauthorized electronic fund transfers Vertrue initiated from EFTA Class members' accounts;

g.       Whether Vertrue refused to reimburse consumers for expenses incurred as a result of Vertrue's erroneous electronic fund transfers;

h.       Whether Vertrue has violated the EFTA with respect to Plaintiff and the EFTA Class members;

i.       Whether Vertrue's acts and practices deceive or have the capacity to deceive consumers;

j.       Whether Vertrue has violated Tennessee's Consumer Protection Act, Tennessee Code Annotated §§ 47-18-104, et seq.;

k.       Whether Vertrue converted Tennessee Class members' money;

l.       Whether Vertrue has been unjustly enriched.

11

33. **Typicality—Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class because, as with all other EFTA Class members, Vertrue initiated electronic fund transfers from Plaintiff's bank accounts without obtaining Plaintiff's authorization in writing or providing them her a copy of that authorization. In addition, Plaintiff's claims are typical of the claims of Tennessee Class members in that Ms. Wike was enrolled in a Vertrue membership and subjected to the alleged unlawful practices at issue in this matter.

34. **Adequacy of Representation—Fed. R. Civ. P. 23(a)(4).** Plaintiff will fairly and adequately protect the interests of Class members. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no interests adverse or antagonistic to those of the Class.

35. **Superiority—Fed. R. Civ. P. 23(b)(3).** A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class members are relatively small compared with the burden and expense that would be entailed by individual litigation of their claims against Vertrue. It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36.     In the alternative, the Class may be certified under Rule 23(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

c.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

**(For Violations Of The Electronic Fund Transfer Act, 15 U.S.C. §§ 1693 <u>et</u> <u>seq.</u>)**

37.     Plaintiff, on behalf of herself and the EFTA Class, hereby realleges and incorporates by reference all paragraphs previously alleged herein.

38.     The purpose of the EFTA is "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems."  15 U.S.C. § 1693.  The primary objective of the EFTA "is the provision of individual consumer rights."  <u>Id.</u>

39.     Plaintiff maintained an "account" as that term is defined in 15 U.S.C. § 1693a(2).

40.     Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 1693a(5).

41.     Defendant engaged in "preauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(9), by debiting Plaintiff's bank accounts on a monthly basis.

13

42.     Defendant engaged in "unauthorized electronic fund transfers," as that term is defined in 15 U.S.C. § 1693a(11), by debiting Plaintiff's bank accounts without Plaintiff's actual authorization and without providing Plaintiff any benefit.

43.     The EFTA provides that "[a] preauthorized electronic fund transfer from a consumer's account may be authorized by the consumer only in writing, and a copy of such authorization shall be provided to the consumer when made."  15 U.S.C. § 1693e(a).  "In the case of preauthorized transfers from a consumer's account to the same person which may vary in amount, . . . the designated payee shall, prior to each transfer, provide reasonable advance notice to the consumer, in accordance with the regulations of the Board, of the amount to be transferred and the scheduled date of the transfer."  15 U.S.C. § 1693e(b).

44.     As alleged herein, Defendant failed to comply with its duties under the EFTA because, during the EFTA Class period, Defendant initiated electronic fund transfers from Plaintiff's and EFTA Class members' accounts without obtaining Plaintiff's and EFTA Class members' authorization in writing and without providing Plaintiff and EFTA Class members with a copy of their authorizations when made.

45.     Defendant further failed to comply with the EFTA in that, insofar as Defendant purports to obtain consumer consent through telephonic tape-recording or electronic means, Defendant failed to comply with the requirements of the Electronic Signatures In Global And National Commerce Act, 15 U.S.C. § 7001 et seq., because Defendant did not obtain from Plaintiff and Class members valid "electronic signatures" within the meaning of 15 U.S.C. § 7006(5), Defendant did not obtain valid consent from Plaintiff and EFTA Class members to provide electronic copies to them of their purported authorizations, and Defendant did not

provide to Plaintiff and EFTA Class members any copies of their purported authorizations, including in electronic form or otherwise.

46. Furthermore, Defendant failed to maintain procedures reasonably adapted to avoid initiating electronic fund transfers from consumers' debit accounts when EFTA Class members misidentified their method of payment as a credit card and therefore Defendant was not entitled to debit Class members' accounts in reliance on EFTA Class members' misidentification.

47. Accordingly, on behalf of themselves and the proposed EFTA Class, Plaintiff seeks actual damages, statutory damages, costs of suit, including a reasonable attorneys' fee, and such other relief that the Court deems appropriate, pursuant to 15 U.S.C. § 1693m.

## SECOND CAUSE OF ACTION

### (For Violations Of The Tennessee Consumer Protection Act ("TCPA"), Tennessee Code Annotated §§ 47-18-104 et seq.)

48. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.

49. Plaintiff asserts this claim for relief on behalf of the Tennessee Class.

50. The TCPA prohibits unfair and deceptive acts or practices.

51. The purposes of the TCPA are, in part (1) to protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce; (2) to encourage and promote the development of fair consumer practices; and (3) to declare and provide for means for maintaining ethical standards of dealing between persons engaged in business and the consuming public. The TCPA is to be

15

liberally construed to protect consumers and others from those who engage in deceptive acts or practices. Amendments enacted in 1991 allow for class actions under the TCPA.

52.     As set forth herein, Defendant's acts, practices, and conduct violate §§ 47-18-104(a)(5), (12), and (27) of the TCPA in that, among other things, (a) Defendant represented that goods or services have approval, characteristics, uses, or benefits that they do not have; (b) Defendant represented that a consumer transaction confers or involves rights, remedies or obligations that it does not have; and (c) Defendant engaged in other acts and practices which are deceptive to consumers. Defendant's acts, practices, and conduct, as alleged herein, are unfair and are likely to deceive and actually do deceive reasonable consumers, in that in the offer, sale, and promotion of its goods and services, and in the ongoing operation of its business, Defendants make material misrepresentations and omit material facts, or otherwise engage in unfair and deceptive conduct, including, among other things, making misleading promotional offers for free trial memberships; misrepresenting the terms and conditions of promotional offers; refusing to cancel memberships; promising to cancel memberships and failing to do so; initiating periodic billing before the expiration of purported free trial periods; initiating periodic billing even if the consumer has cancelled or attempted to cancel a membership; claiming free trial memberships are "risk free;" offering a free trial membership despite the fact that the purported benefits of free trial memberships cannot be accessed during the free trial period; promoting membership benefits that do not have the characteristics attributed to them; promoting membership benefits that are difficult or impossible for consumers to access or obtain; promoting free trial periods despite the fact that the consumer must pay membership fees to access benefits that were supposed to be available during the free trial period; mailing consumers membership benefit information that is packaged to look like junk mail; claiming that Vertrue memberships are

valuable and will save consumers money and confer other benefits; imposing unreasonable and undisclosed conditions that consumers must fulfill to access membership benefits; operating a business in such a manner that thousands of consumers complain that they have been billed for a product they have never heard of and do not want; demanding payment for sham products that no consumer would voluntarily purchase; demanding payment from consumers while refusing to provide evidence the consumer consented to be charged for a Vertrue membership product; impeding or obstructing the efforts of consumers to cancel their purported memberships; and billing consumers for Vertrue membership programs whether or not they notify Vertrue of their desire to cancel their membership prior to expiration of the free trial period.

53.     Plaintiff and Tennessee Class members seek actual damages, including treble damages, an injunction prohibiting Defendant from continuing in such practices, restitution, disgorgement of all profits obtained from unfair competition, punitive damages, attorneys' fees and costs, and any other relief that the Court deems necessary or proper.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

54.     Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

55.     Plaintiff Wike asserts this claim for relief on behalf of the Tennessee Class.

56.     Defendant has received, and continues to receive, benefits at the expense of Plaintiff and Tennessee Class members and it is inequitable for Defendant to retain these benefits.

57.     Through its unfair and deceptive conduct, Defendant has unlawfully obtained money from Plaintiff and Tennessee Class members for unordered and unwanted membership programs.

58.     Defendant unlawfully has imposed, and continues to impose, charges against Plaintiff's and Tennessee Class members' bank accounts.

59.     As a direct and proximate result of Defendant's unlawful acts and practices, Plaintiff and Tennessee Class members have paid money to Defendant that they do not owe, and are therefore entitled to restoration of the money they paid to Defendant, along with interest thereon from the date the money was converted by Defendant to the date of judgment.

## FOURTH CAUSE OF ACTION

### (Conversion)

60.     Plaintiff Wike hereby realleges and incorporates by reference all paragraphs previously alleged herein.

61.     Plaintiff asserts this claim for relief on behalf of the Tennessee Class.

62.     Vertrue has charged and collected money from Plaintiff and Tennessee Class members for purported membership programs without Plaintiff's and Tennessee Class members' authorization.  Vertrue has thus converted to its own use property belonging to Plaintiff and Tennessee Class members,' namely money, without Plaintiff's and Tennessee Class members' consent.  The specific sum of each Tennessee Class member's money converted by Vertrue is readily identifiable from information and records in Vertrue's possession and control.

63.     As a direct and proximate result of Vertrue's unlawful acts and conduct, Plaintiff and Tennessee Class members were deprived of the use of their money that was unlawfully converted by Vertrue, and are therefore entitled to restoration of their money, along with interest

thereon from the date the money was converted by Vertrue to the date of judgment, compensatory damages, and punitive damages.

## FIFTH CAUSE OF ACTION

### (For Declaratory Relief Pursuant To 28 U.S.C. § 2201 et seq.)

64.     Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein.

65.     Plaintiff asserts this claim on behalf of the Class.

66.     An actual controversy, over which this Court has jurisdiction, has arisen and now exists between the parties relating to the legal rights and duties of Plaintiff and Defendant for which Plaintiff desires a declaration of rights.

67.     Defendant has withdrawn funds from Plaintiff's and Class members' accounts without Plaintiff's and Class members' authorization or consent.

68.     A declaratory judgment is necessary to determine Plaintiff's and Class members' rights in connection with Defendant's unauthorized charges for its purported membership programs, including, among other things, a declaration that Defendant has violated the Electronic Funds Transfer Act, 15 U.S.C. § 1693 et seq.; and a declaration that Defendant has violated the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment as follows:

a.     For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and her counsel of record to represent the proposed Class;

19

b.      For an order declaring that Vertrue has violated the Electronic Funds Transfer Act, 15 U.S.C. §§ 1693 et seq.;

c.      For an order declaring that Vertrue has violated the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104 et seq.;

d.      For an order enjoining Vertrue's wrongful conduct;

e.      For an order awarding Plaintiff and the Class restitution of all money acquired by Vertrue from Plaintiff and Class members;

f.      For an order that Defendant disgorge all profits obtained from unfair competition;

g.      For an order awarding Plaintiff and Class members actual and statutory damages, and interest thereon, pursuant to 15 U.S.C. §1693m;

h.      For an order awarding Plaintiff and the Class compensatory and consequential damages in an amount to be proven at trial, together with interest thereon;

i.      For an order awarding Plaintiff and the Class treble damages;

j.      For an order awarding Plaintiff and the Class attorneys' fees and costs of suit, including expert witness fees;

k.      For an order awarding Plaintiff and the Class pre-judgment and post-judgment interest;

l.      For an order awarding Plaintiff and the Class such other and further relief as this Court deems just and proper.

20

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.


Respectfully submitted,

Dated:  June 30, 2006


/s/ *Gerald E. Martin* (with permission)

Gerald E. Martin (BPR# 20193)
**BARRETT, JOHNSTON & PARSLEY**
217 Second Avenue North
Nashville, Tennessee 37201
Phone:  (615) 244-2202
Facsimile:  (615) 252-3798

Daniel C. Girard (admitted *pro hac vice*)
A. J. De Bartolomeo (admitted *pro hac vice*)
Allison L. Ehlert (admitted *pro hac vice*)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California  94108
Telephone:  (415) 981-4800
Facsimile:  (415) 981-4846

Attorneys for Individual and
Representative Plaintiff

21

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2006, I electronically filed the document listed below with the Clerk of the Court:

### FIRST AMENDED CLASS ACTION COMPLAINT

I also certify that the above documents were filed using the CM/ECF system, which will send electronic notification of said filing to the following:

**Robert Allen Horowitz**
horowitzr@gtlaw.com

**Gerald E. Martin**
jmartin@barrettjohnston.com

**Robert S. Patterson**
bpatterson@boultcummings.com


 /s/   *Allison L. Ehlert*

**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108

1