UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MARGARET WIKE, on behalf of herself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | No. 3:06-0204 JUDGE ECHOLS |
| VERTRUE, INC., f/k/a MEMBERWORKS, INC., ADAPTIVE MARKETING, LLC; INFLUENT INC. f/k/a INTERACTIVE TELESERVICES CORPORATION, ) ) ) ) ) ) | |
| Defendants. ) | |

## MEMORANDUM

Defendant Influent, Inc. ("Influent") filed a Motion to Dismiss Plaintiff's Claims (Docket Entry No. 185), to which Plaintiff Margaret Wike ("Wike") filed a response in opposition (Docket Entry No. 198), and Influent filed a reply (Docket Entry No. 208).

## I. PROCEDURAL HISTORY

Wike brought this class action lawsuit on behalf of herself and all similarly situated persons who allegedly have been harmed by the unlawful and deceptive "cramming" practices of Defendant Vertrue, Inc. ("Vertrue") and its wholly-owned subsidiary and operating company, Adaptive Marketing, LLC ("Adaptive Marketing"). "Cramming" refers to the practice of imposing unauthorized charges for membership fees on consumer billing statements. (Docket Entry No. 157, Second Amended Class Action Complaint ¶¶ 1, 15). Wike alleges that Vertrue's business is the sale of membership programs through telemarketing that supposedly provide the consumer with access to discounts on various consumer goods and services. (Id. ¶ 2, 13-15.) Wike alleges that "Vertrue depends . . . on the use of coercive, deceptive and fraudulent practices to generate new business."

1

(Id. ¶ 2.) In a previous Memorandum and Order ruling on a motion to dismiss (Docket Entry Nos. 98, 99), the Court set forth a more complete recitation of Wike's allegations against Vertrue, and the Court will not repeat all of that information as Wike's allegations against Vertrue are not at issue in the present motion to dismiss.

In filing the Second Amended Class Action Complaint on October 18, 2007, Wike added as defendants Adaptive Marketing and Influent. Wike's allegations against Influent are indeed sparse. In paragraph 10, Wike alleges:

> Defendant Influent Inc. ("Influent," collectively with Vertrue, Inc. and Adaptive Marketing LLC, "Defendants") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Dublin, Ohio.

In the section entitled, "**GENERAL ALLEGATIONS APPLICABLE TO ALL CLAIMS**" Influent is mentioned by name once in the eighteen (18) paragraphs (Complaint ¶¶ 11-28) spanning six and one-half pages. Wike alleges:

> 14. Vertrue uses uniform and systematic marketing procedures to sell its memberships to the public. Vertrue implements and monitors the use of these uniform marketing techniques through contractual arrangements with telemarketing organizations that agree to market Vertrue memberships in accordance with pre-established marketing techniques and practices specified by Vertrue. Vertrue operatives also visit the telemarketing facilities and make test calls where they pose as consumers. <u>Vertrue's independent telemarketers include Influent, Inc., and its operating subsidiary, Influent Philippines, Inc.</u>

(Id. ¶ 14 (emphasis added).) Wike alleges that Adaptive Marketing is the alter ego of Vertrue, (Id. ¶ 12), and thereafter the factual allegations of the Complaint refer to Vertrue. For example, Wike alleges that Vertrue "imposes membership fees for its programs directly against consumers' credit cards, debit cards,and bank accounts[,]" (Id. ¶ 15); "Vertrue promotes the sale of its products through the offer of trial memberships it describes as 'risk-free[,]" (Id. ¶ 20); "Vertrue's promotional offers are misleading[,]" "Vertrue makes it impossible to cancel the membership[,]" "Vertrue initiates periodic billing before the expiration of the trial period[,]" and "Vertrue does not provide

2

any actual benefits" (Id. ¶ 21); "Vertrue's business practices systematically generate thousands of complaints from individuals[,]" (Id. ¶ 22); and "Vertrue is aware of the widespread consumer complaints against it but makes no effort to remedy or suspend the practices which give rise to the complaints[,]" (Id. ¶ 27).

Only two paragraphs of the Complaint could even be said to imply action on the part of Influent:

> 18. Vertrue markets its membership programs through various marketing channels, including telemarketing, direct mail and the Internet. Vertrue's telemarketing activities are, in effect sophisticated "boiler room" operations, involving thousands of low-paid workers who attempt to generate sales activity over the telephone. Vertrue's principal telemarketing channels are known as "outbound" telemarketing and "call transfer" telemarketing. "Outbound" telemarketing consists of traditional "cold calling," with Vertrue operatives making tens of thousands of unsolicited calls to consumers' home numbers. "Call transfer" telemarketing is a form of "inbound" telemarketing. With call transfer telemarketing (also referred to at Vertrue as "Smart Transfer" calling), Vertrue operatives receive the transfer of a customer initiated call. Over the past four years, hundreds of thousands of consumers throughout the United States have been enrolled in and billed for Vertrue's membership programs as a result of Vertrue's telemarketing. Vertrue continues to use telemarketing to market memberships.

> 19. In both outbound and call transfer telemarketing, Vertrue uses strategic partnerships that it has established with various companies, for example, America Online, Inc. ("AOL"), Greyhound Lines, Inc. ("Greyhound"), and a number of financial institutions, for access to customer lists and demographic information. These partnerships are formed in order to market Vertrue's membership programs to the strategic partner's customers. In outbound telemarketing, Vertrue's telemarketers cold call customers of the strategic partners at home. In call transfer telemarketing, customers of the strategic partners who call those companies (for example, seeking customer service) are transferred to Vertrue's telemarketers. In both channels, customers are offered a premium such as a "free $50 Wal-Mart gift card" to sign up for a trial membership in a Vertrue program.

In the section of the Complaint entitled "**Plaintiff's Experience**," Wike does not mention Influent by name or identify any telemarketer who spoke with her on behalf of Vertrue. Wike alleges that, "[w]hile reviewing her March 2005 bank account statement, [she] discovered a charge of $19.95 to "'Galleria USA.'" At that time, Ms. Wike did not question the charge because she

mistakenly thought it was for an online service that she had ordered." (Complaint ¶ 29.) Wike further alleges that, when the "Galleria USA" charge appeared on her April 2005 bank account statement, she called the phone number listed next to the "Galleria USA" entry on her bank account statement. (Id. ¶ 30.) The remainder of the allegations in this section detail Wike's experience with Vertrue in trying to get the charge removed from her bank account and obtain reimbursement.

Wike's first cause of action is a claim for violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693 *et seq.*, brought against Vertrue and Adaptive Marketing. (Complaint ¶¶ 43-53.) Although Wike stated in paragraph 3 of the Complaint that she "alleges claims against all Defendants under the Electronic Funds Transfer Act[,]" she now clarifies in her response to Influent's motion to dismiss that she is not alleging an EFTA claim against Influent. (Docket Entry No. 198, Plaintiff's Memorandum at 1.) Thus, Influent's motion to dismiss this claim against it will be denied as moot.

Wike asserts a cause of action against Influent under the Tennessee Consumer Protection Act ("TCPA), Tenn. Code Ann. § 47-18-104 *et seq.*, (Complaint ¶¶ 54-59), and causes of action against Influent for unjust enrichment and conversion under Tennessee common law. (Id. ¶¶ 60-65, 66-69.) Wike also seeks a declaratory judgment against Influent under 28 U.S.C. § 2201 *et seq.* (Id. ¶¶ 70-73.) Wike intends to seek certification of a nationwide class comprised of all persons from whose accounts Vertrue initiated an electronic fund transfer for one or more Vertrue membership programs from the period March 14, 2005 to the present (the "EFTA Class"), and a statewide class of Tennessee consumers (the "Tennessee Class") comprised of all Tennessee residents who were billed for one or more Vertrue memberships during the period from March 14, 2003 to the present.

Influent seeks dismissal of all claims against it on the grounds that the TCPA claim is time-barred, the Complaint lacks sufficient factual allegations against Influent to state claims against it, the unjust enrichment claim cannot stand because Influent did not receive or unjustly retain a benefit

4

from Wike, and the conversion claim must fail because Wike admits that Influent did not appropriate her property. Influent suggests that, because these substantive claims fail, the request for a declaratory judgment must also fail.

## II. STANDARD OF REVIEW

In evaluating the Complaint under Rule 12(b)(6), the Court must accept as true all of Wike's allegations and resolve all doubts in Wike's favor. See Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir. 1987). While a complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. —, 167 L.Ed.2d 929, 940 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 (1957)). The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944; Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).

## III. ANALYSIS

**A. Tennessee Consumer Protection Act ("TCPA")**

The TCPA "provides a cause of action for one who suffers an ascertainable monetary loss as a result of another's unfair or deceptive acts." Power & Telephone Supply Co., Inc. v. SunTrust Banks, Inc., 447 F.3d 923, 930 (6th 2006) (citing Tenn. Code Ann. § 47-18-109(a)(1)). The statute of limitations for an action brought under the TCPA is one (1) year "from a person's discovery of the unlawful act or practice[.]" Tenn. Code Ann. § 47-18-110. A cause of action accrues and the statute of limitations begins to run "when the injury occurs or is discovered, or when in the exercise of reasonable care and diligence, it should have been discovered." Potts v. Celotex Corp., 796 S.W.2d 678, 680 (Tenn. 1990). "The discovery rule applies only in cases where the plaintiff does

5

not discover and reasonably could not be expected to discover that he had a right of action." Id. at 680-681. Further, "the statute is tolled only during the period when the plaintiff had no knowledge at all that the wrong had occurred and, as a reasonable person, was not put on inquiry." Id.

Influent argues that the limitations period on Wike's TCPA claim began to run in March 2005 when Wike alleges she first realized there was a charge of $19.95 by Galleria USA on her bank account statement. Influent further contends that Wike did not file suit against it within one year (by March 2006), but waited until October 2007 to name Influent as a defendant in the Second Amended Class Action Complaint. Influent also argues that Tennessee's relation back doctrine does not preserve Wike's TCPA claim against it. Tennessee Rule of Civil Procedure 15.03 provides:

> **Relation Back of Amendments. –** Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Influent asserts that Wike cannot satisfy the requirements of Rule 15.03 because she did not name Influent as a defendant in order to correct a misnomer or other similar mistake concerning the identity of the proper party. See Lease v. Tipton, 722 S.W.2d 379, 380 (Tenn. 1986) (holding relation back doctrine did not save untimely claim where plaintiff's failure to sue her spouse as co-tortfeasor when she initially brought suit against defendants was not due to misnomer or mistake in identity of correct party, but because law at that time did not allow suit against spouse) .

Wike contends her TCPA claim is timely because she commenced her action against Vertrue on March 14, 2006, within one year of discovering the March 2005 charge on her bank account statement. She alleges she did not know, and could not have known, that Influent was the

6

telemarketer responsible for "cramming" her with a Galleria USA membership until Vertrue revealed on August 7, 2006, during this litigation, that its telemarketing was outsourced to Influent. On that date, Vertrue filed the declaration of its Senior Vice President of Sales and Client Services, Douglas Weiss, who stated that, during Wike's call with America Online ("AOL") on February 13, 2005, "AOL transferred the call to a marketer from Influent, Inc., a marketing company retained by Adaptive Marketing."  (Docket Entry No. 53, Ex. 2, Weiss Declaration ¶ 9.)

Under either the discovery rule or the doctrine of fraudulent concealment, Wike claims the TCPA statute of limitations began to run on August 7, 2006, the date she "first learned she had been crammed by Influent[.]" (Docket Entry No. 198, Memorandum at 6.)  She filed a motion to amend her class action complaint to add Influent as a defendant on June 13, 2007, and Influent had notice of the motion to amend by June 21, 2007, less than one year after August 7, 2006.  After a status conference with the Magistrate Judge, Wike renewed her motion to amend on August 7, 2007. (Docket Entry Nos. 133, 135.)  On October 3, 2007, this Court denied Wike's motion to amend insofar as she sought to add claims against all defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and ordered Wike to file her Second Amended Class Action Complaint without the RICO claims.  Wike did so on October 18, 2007, and thus, she claims her TCPA claim against Influent, which was added on that date, is timely.

To support her assertion that the limitations period began to run under the discovery rule on August 7, 2006, Wike cites McIntosh v. Blanton, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004).  In that medical malpractice case, the Tennessee Court of Appeals stated: "The statute of limitations begins to run when the plaintiff is 'aware of the facts sufficient to put a reasonable person on notice that he has suffered an injury *as a result of wrongful conduct*,' and the plaintiff knows the identity of the person who engaged in the conduct."  Id. (emphasis in original).  See also Foster v. Harris, 633 S.W.2d 304, 305 (Tenn. 1982) (stating same rule).

7

The Sixth Circuit recently analyzed this rule as stated in Foster. Schultz v. Davis, 495 F.3d 289, 292-293 (6th Cir. 2007). First, the appellate court observed that Foster is distinguishable in cases that are not medical malpractice cases. Id. Even if Foster were applicable, the panel said, the plaintiff in Schultz "knew or was put on notice on August 7, 2002 that she was injured as a result of allegedly wrongful or tortious conduct, although she may not have known the specific tortfeasors." Id. The panel reasoned that one who knows she is injured should attempt to determine who caused the injury. Id. at 293. Thus, the statute of limitations began to run on the date the injury occurred, not on the date the party causing the injury was identified. Id.

In this case, Wike alleges that she knew of the wrongful conduct perpetrated against her in March 2005, when she initially realized the charge on her bank account statement, but certainly no later than April 2005, when she first called Vertrue in an effort to stop the monthly charges to her account by Galleria USA. (Complaint ¶¶ 29-30.) Under Tennessee's discovery rule, the statute of limitations began to run no later than April 2005 when Wike discovered her injury, see Potts, 796 S.W.2d at 680, and under Schultz Wike was under an obligation at that time to discover the identity of the wrongdoer(s). Wike makes no suggestion that she tried to learn Influent's identity but was unsuccessful or was thwarted in her attempt.

The TCPA limitations period expired in April 2006, long before Wike added Influent as a defendant. The Tennessee relation back doctrine does not operate to save Wike's addition of Influent as a party in October 2007 because Wike did not amend the Complaint to correct a mistake or misnomer, but to add an entirely new party.[1]

---

[1]Wike states in her brief that "Influent itself argues that Plaintiff '*mistakenly identified another party* in her original complaint." (Docket Entry No. 198, Memorandum at 12.) Influent said nothing of the kind. Influent wrote: "Here, Ms. Wike did not add Influent to the Second Amended Complaint because she mistakenly identified another party in her original complaint[.]" (Docket Entry No. 186, Memorandum at 5.) Wike ignores the first half of the sentence. The Court interprets the sentence to mean that Wike did not add Influent as a party in order to correct an earlier

8

Wike accuses Vertrue of fraduently concealing the identity of Influent from her until August 7, 2006. Based on Vertrue's fraud, she asserts she should receive the benefit of tolling. To assert fraudulent concealment as a basis for tolling, Wike must plead three elements: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of her cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts. Hoover v. Langston Equip. Assoc., Inc., 958 F.2d 742, 744 n.1 (6th Cir. 1992).

Equitable estoppel, utilized in a case to compensate for fraudulent concealment, "only applies when the defendant has taken steps to specifically prevent the plaintiff from timely filing his complaint[.]" Fahrner v. SW Mfg., Inc., 48 S.W.3d 141, 146 (Tenn. 2001). "Equitable estoppel is premised on the defendant's wrongdoing, and, consequently, the plaintiff must be given the time during which the defendant misled the plaintiff so that plaintiff's entitlement to the full statutory time period is preserved. This is similar to the result in discovery rule cases, where the defendant's fraudulent concealment prevents the plaintiff from discovering his cause of action." Id.

Wike has not alleged that *Influent* engaged in any fraudulent conduct to preclude her from learning of her causes of action against Influent or from timely filing her claims against Influent. Wike's complaints of fraudulent concealment are directed at Vertrue, which she alleges did not disclose Influent's name to her until August 7, 2006. Wike is silent about any investigation or formal discovery she undertook before or after the original complaint was filed to identify all defendants who participated in the alleged wrongdoing against her. Thus, the Court has no information before it concerning Wike's due diligence.

---

mistaken identification of another party, but to name Influent as a party for the first time.

9

Upon learning of her injury in at least April 2005, Wike knew or should have known that she had one or more causes of action against the telemarketer with whom she spoke by telephone on February 13, 2005. Consequently, she "should have sought to discover the identity of that party[]" before the one-year statute of limitations ran. See Schultz, 495 F.3d at 293. See also Dowdy v. Prison Health Servs., 21 Fed. Appx. 433, 435 (6th Cir. 2001) (holding statute of limitations is not tolled while plaintiff attempts to identify correct defendants and doctrine of fraudulent concealment does not apply where plaintiff fails to show that defendant concealed its conduct or that plaintiff exercised due diligence in trying to find out about any potential cause of action). Wike's claim against Influent under the TCPA is untimely filed, Wike is not entitled to tolling for fraudulent concealment by Vertrue, and the motion to dismiss the claim will be granted.

**B. Unjust enrichment**

Influent next suggests that Wike cannot proceed on an unjust enrichment theory because she failed to plead sufficient facts to show that Influent was unjustly enriched. "The elements of an unjust enrichment claim are: 1) '[a] benefit conferred upon the defendant by the plaintiff'; 2) 'appreciation by the defendant of such benefit'; and 3) 'acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof.'" Freeman Indus., LLC v. Eastman Chemical Co., 172 S.W.3d 512, 525 (Tenn. 2005) (quoting Paschall's, Inc. v. Dozier, 407 S.W.2d 150, 155 (Tenn. 1966)). "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." Id. This benefit need not be direct. Id. The most significant requirement for recovery under this theory is that the enrichment must be unjust. Id. "The underlying principle of the doctrine of unjust enrichment is that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the

10

provider of the benefit." Id. The plaintiff must also demonstrate that she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract. Id.

Here, Wike has not alleged any specific facts against Influent to show that Influent was unjustly enriched by any benefit Wike conferred on Influent and for which Influent refused to make adequate compensation. Wike alleged that Vertrue, not Influent, made unauthorized charges against her bank account even after she asked Vertrue to stop such conduct. Thus, Wike asserts that she conferred a direct benefit on Vertrue, not Influent. Wike has not alleged that she exhausted her remedies against Vertrue.

Wike further alleged in paragraph 14 of the Complaint that "Vertrue implements and monitors the use of these uniform marketing techniques through contractual arrangements with telemarketing organizations[,]" and one can infer from such an allegation that Vertrue compensates telemarketing organizations to make "outbound" cold calls and accept "call transfers" from strategic partners such as AOL. Wike does not allege any facts to support these bare and conclusory allegations.[2] As the Court stated above, while a complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for her entitlement to relief, and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp., 167 L.Ed.2d at 940. The factual allegations supplied must be enough to show a plausible right to relief. Id. at 940-942. A complaint must contain either direct or inferential allegations respecting all of the material elements to sustain a recovery under some viable legal theory. Id. at 944.

---

[2]Wike refers the Court to a contract between Vertrue and Influent, supposedly filed elsewhere in the record, along with declarations of witnesses supporting Wike's position that Vertrue paid Influent to provide telemarketing services. On motion to dismiss for failure to state a claim, the Court may not consider matters outside the relevant pleadings without converting the motion to one for summary judgment, Fed.R.Civ.P. 56, and therefore, the Court will not consider the evidence identified by Wike.

11

Wike relies on her allegation that all Defendants "have received, and continue to receive, benefits at the expense of Plaintiff Wike and Tennessee Class members and it is inequitable for Defendants to retain these benefits." (Complaint ¶ 62.) Wike further alleged that, "[t]hrough its unfair and deceptive conduct, Defendants have unlawfully obtained money from Plaintiff Wike and Tennessee Class members for unordered and unwanted membership programs[,]" (id. ¶ 63) and "Defendants unlawfully have imposed, and continue to impose, charges against Plaintiff Wike's and Tennessee Class members' bank and credit card accounts." (Id. ¶ 64.) But it is clear from other allegations in the Complaint that Wike claims Vertrue, not Influent, unlawfully imposed charges against her bank account. Finally, Wike alleges that "[a]s a direct and proximate result of Defendants' unlawful acts and practices, Plaintiff Wike and Tennessee Class members have paid money to Defendants that they do not owe, and are therefore entitled to restoration of the money they paid to Defendants, along with interest thereon from the date the money was converted by Defendants to the date of judgment." (Id. ¶ 65.) Yet, Wike alleged that she paid money to Vertrue, not to Influent.

The Court concludes that Wike's allegations lack the factual specificity required by Bell Atlantic Corp. to state a plausible right to relief against Influent for unjust enrichment, for she has not alleged what benefit she conferred on Influent, nor has she pled that she exhausted her remedies against Vertrue. Therefore, Wike fails to state a claim against Influent for unjust enrichment, and the motion to dismiss the claim will be granted.

**C. Conversion**

Conversion is the appropriation of tangible property to a party's own use and benefit, by the exercise of dominion over it, in defiance of the owner's rights. Lance Prods., Inc. v. Commerce Union Bank, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). A plaintiff seeking to make out a case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit;

12

(2) by the intentional exercise of dominion over it; and (3) in defiance of the true owner's rights. Kinnard v. Shoney's Inc., 100 F. Supp.2d 781, 797 (M.D. Tenn. 2000); Mammoth Cave Prod. Credit Ass'n v. Oldham, 569 S.W.2d 833, 836-837 (Tenn. Ct. App. 1977). Citing various Tennessee cases, Wike argues that two or more parties may be held jointly and severally liable for conversion damages when they intentionally unite in the wrongful act causing the injury.

Wike failed to include in her Complaint, however, any specific factual allegations to demonstrate how Influent appropriated and exercised control over her property or to show that Influent should be held jointly and severally liable with Vertrue as a joint tortfeasor. Wike alleges that Vertrue, not Influent, charged her bank account monthly for a Galleria USA membership. She alleges in conclusory fashion, without any specific factual support, that all Defendants "charged and collected money from Plaintiff Wike and Tennessee Class members for purported membership programs without . . . authorization." (Complaint ¶ 68.) Wike mentions Influent once by name in the entire factual allegations section of the Complaint. She does not allege specific facts tying Influent to Vertrue as a joint tortfeasor. Her allegations are insufficient to state a claim against Influent for conversion under Tennessee law. Therefore, the motion to dismiss this claim will be granted.

**D. Declaratory judgment**

Finally, Influent contends that the cause of action for declaratory judgment should be dismissed for lack of an actual controversy between the parties where the TCPA, unjust enrichment, and conversion claims against Influent are dismissed. The Declaratory Judgment Act, 28 U.S.C. § 2201, confers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants. Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008). Here, where Wike's claims against Influent will be dismissed, there is no substantial controversy remaining between parties of adverse legal interests that is of sufficient immediacy to warrant the issuance of

13

a declaratory judgment. Therefore, the Court will also grant the motion to dismiss the declaratory judgment cause of action.

## IV. CONCLUSION

For all of the reasons stated, Defendant Influent's Motion to Dismiss Plaintiff's Claims (Docket Entry No. 185) will be granted in part and denied as moot in part. The motion will be granted because Wike's claim against Influent under the TCPA is time-barred and she failed to state claims against Influent for unjust enrichment and conversion under Tennessee common law. The declaratory judgment claim will be dismissed because the Court cannot issue a declaratory judgment when there is no actual controversy remaining between the parties. These three claims will be dismissed with prejudice. Influent's motion to dismiss the cause of action under the EFTA will be denied as moot because Wike clarifies that she did not bring such a claim against Influent.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE