# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| MARGARET WIKE, on behalf of herself and all others similarly situated, | CASE NO. 3:06-00204 |
| | Judge Echols/Brown |
| Plaintiff, | |
| vs. | CLASS ACTION |
| VERTRUE, INC. f/k/a MEMBERWORKS, INC.; ADAPTIVE MARKETING LLC; INFLUENT INC. f/k/a INTERACTIVE TELESERVICES CORPORATION, | JURY TRIAL DEMANDED |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPPORT OF PLAINTIFF'S RENEWED MOTION FOR LEAVE TO AMEND COMPLAINT TO ADD RICO CLAIMS**

## I. INTRODUCTION

In June 2009, the Sixth Circuit handed down its opinion in this case, reversing the dismissal of Plaintiff's claim under the Electronic Fund Transfer Act. In remanding, the Sixth Circuit also cited two cases that "bear on the question" of whether Plaintiff should receive leave to amend her complaint to add RICO claims, *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008), and *Brown v. Cassens Transport Co.*, 546 F.3d 347 (6th Cir. 2008).

Leave to amend should be freely given when justice so requires, which is the case here. The requested leave would not be futile, as the proposed RICO complaint accompanying this motion could withstand a motion to dismiss under Rule 12(b)(6). The proposed complaint sufficiently alleges that Plaintiff suffered injury "by reason of" Defendants' scheme, and pleads a pattern of racketeering activity in furtherance of the scheme.

Therefore, the Court should grant this renewed motion for leave to amend to add RICO claims, and authorize the filing of the proposed amended complaint.

## II. PROCEDURAL HISTORY

In August 2007, Plaintiff filed a motion for leave to amend to add RICO claims and add Adaptive Marketing and Influent as defendants. (*See* Dkt No. 135.)

On October 3, 2007, Magistrate Judge Brown denied the motion to add RICO claims, on the ground that the claims could not withstand a motion to dismiss under Rule 12(b)(6). (*See* Dkt No. 154.)

On October 18, 2007, Plaintiff filed a motion for de novo determination of her motion for leave to amend. (*See* Dkt No. 158.) On January 30, 2008, this Court affirmed, agreeing with the Magistrate Judge's reasoning. (*See* Dkt No. 211.)

On February 13, 2008, Plaintiff filed a motion for reconsideration. (*See* Dkt No. 216.)

1

On June 11, 2008, after the motion was fully briefed, Plaintiff filed a notice of new authority, citing *Bridge v. Phoenix Bond & Indemnity Co.*, 128 S. Ct. 2131 (2008). (*See* Dkt No. 304.)

On July 8, 2008, the Court denied Plaintiff's motion for reconsideration. (*See* Dkt No. 311.) Also on July 8, 2008, the Court held that the EFTA claim asserted in the second amended complaint was time-barred, and granted Defendants' motion for summary judgment. (*See* Dkt No. 312, at 15-23.)

Plaintiff appealed from the judgment. In June 2009, the Sixth Circuit handed down its opinion. The Sixth Circuit reversed the dismissal of Plaintiff's EFTA claim. *See Wike v. Vertrue, Inc.*, 566 F.3d 590, 592-96 (6th Cir. 2009). The Sixth Circuit also directed this Court to revisit the issue of allowing Plaintiff leave to add RICO claims, in light of *Bridge*, 128 S. Ct. 2131, and *Brown v. Cassens Transport Co.*, 546 F.3d 347 (6th Cir. 2008). *See* 566 F.3d at 596.

### III. LEGAL STANDARDS

A plaintiff may amend his or her complaint once as a matter of course before being served with an answer. Fed. R. Civ. P. 15(a)(1). Thereafter, plaintiff may amend the complaint "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 15 "plainly embodies a liberal amendment policy," *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002), and "reinforce[s] the principle that cases should be tried on their merits rather than the technicalities of pleadings," *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

2

In considering whether or not amendment would be futile, i.e., whether the proposed amendment could withstand a motion to dismiss, the court " must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Bledsoe v. Community Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)); *see also Freightliner of Knoxville v. DaimlerChrysler Vans, LLC*, 484 F.3d 865, 873 (6th Cir. 2007) ("[O]ur standard of review of a 12(b)(6) motion to dismiss requires that we 'construe the complaint liberally in favor of the plaintiff.'").

## IV. ARGUMENT

This Court previously denied Plaintiff leave to add RICO claims on two grounds: (i) that Plaintiff could not plead injury "by reason of" Defendants' conduct, as required by 18 U.S.C. § 1962(c); and (ii) that Plaintiff did not plead a pattern of racketeering activity. Both *Bridge*, 128 S. Ct. 2131, and *Brown*, 546 F.3d 347, address each of these elements and confirm that Plaintiff's allegations are sufficient.

### A. The Proposed Complaint Pleads Injury "By Reason Of" Defendants' Scheme

*Bridge* involved an annual public auction held by Cook County, Illinois, at which the county sold tax liens it had placed on the property of delinquent taxpayers. Because many liens attracted multiple bids at the same price, the county allocated such liens on a rotating basis among the bidders. The county prohibited participants from submitting multiple bids for the same parcel through agents or related entities. *See* 128 S. Ct. at 2135. Plaintiffs and defendants were regular bidders in the auctions. Plaintiffs sued under RICO, 18 U.S.C. § 1962(c), alleging that defendants operated a scheme under which their affiliates posed as independent entities, submitted bids for the same properties, and filed false attestations with the county that they

3

complied with the single-bidder rule. Plaintiffs alleged that in furtherance of the scheme, defendants engaged in a pattern of mail fraud by mailing notices to owners of the properties whose liens defendants had obtained, as required by state law. *See id.* at 2136.

The Supreme Court held that the plaintiffs had sufficiently and "straightforward[ly]" pleaded injury and causation under RICO. "Accepting their allegations as true, respondents clearly were injured by petitioners' scheme: As a result of petitioners' fraud, respondents lost valuable liens they otherwise would have been awarded." *Id.* at 2139. "And this is true even though they did not rely on petitioners' false attestations of compliance with the county's rules." *Id.* at 2139.

In *Brown*, the plaintiffs were employees of the Cassens company who had submitted worker's compensation claims. They alleged that Cassens and its outside claims adjuster hired unqualified doctors to give fraudulent medical opinions supporting the denial of worker's compensation benefits, and communicated by mail and wire in furtherance of the scheme. *See* 546 F.3d at 351. The Sixth Circuit held that plaintiffs sufficiently pleaded causation under RICO. "Accepting the facts as recited in the complaint, the defendants' fraudulent acts were a **'substantial and foreseeable cause'** of the injuries alleged by the plaintiffs: the deprivation of their worker's compensation benefits and expenses for attorney fees and medical care." *Id.* at 357 (emphasis added). "The 'direct causal connection' requirement has been met, as **no 'intricate, uncertain' inquiries are required** to link the defendants' alleged fraud and the plaintiffs' injuries." *Id.* (emphasis added).

The Sixth Circuit also cited its earlier opinion in *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004), as "explaining, in a RICO case, that proximate cause is shown when 'the wrongful conduct [is] a substantial and foreseeable cause' of the injury and the

4

relationship between the wrongful conduct and the injury is '**logical and not speculative**.'" *Brown*, 546 F.3d at 357 (emphasis added).

The proposed complaint here (attached as Exhibit A to Plaintiff's Renewed Motion For Leave To Amend Complaint To Add RICO Claims) satisfies the requirements for pleading proximate cause set forth in *Bridge* and *Brown*. Plaintiff alleges that Defendants conducted a scheme to deliver a deceptive telemarketing pitch to consumers, to induce them to provide their credit or debit card information. Once a consumer provided the information and was taken through the recorded "confirmation" phase of the pitch, Defendants charged recurring fees to the consumer's credit or debit card account. Plaintiff was injured in precisely this manner. Plaintiff was subjected to the pitch and gave the telemarketer her debit card information in the belief that she was accepting the offered $50 Wal-Mart gift card, but Defendants proceeded to enroll her in their Galleria program and take monthly fees from her debit card account. (*See* proposed complaint ¶¶ 54-60, 75-77.)

Thus, the theory of causation is straightforward. As they did with hundreds of thousands of other consumers, Defendants targeted Plaintiff with the objective of obtaining her billing information and charging her recurring fees, and they succeeded. The scheme was a substantial and foreseeable cause of Plaintiff's injury. More than that, her injury was an intended and desired outcome. No intricate, uncertain inquiries are required to link the scheme and Plaintiff's injury, and the relationship between the two is logical and not speculative. Thus, Plaintiff sufficiently alleges causation under *Bridge* and *Brown*.

In its July 2008 Order, this Court concluded that Plaintiff could not allege that she was injured "by reason of" Defendants' conduct because of her deposition testimony:

> . . . Plaintiff did not testify at her deposition that she was injured by reason of the alleged misrepresentation of the telemarketer. Rather, unlike other

5

> consumers, Plaintiff testified she <u>declined</u> the offer to try the Galleria
> membership. Therefore, she has not alleged, and cannot allege, that she was
> "injured in [her] business or property <u>by reason of</u>" alleged wire or mail fraud
> which she claims she successfully resisted.

(Dkt No. 311, at 3.) But this testimony actually bolsters Plaintiff's allegations. Plaintiff alleges that the whole point of Defendants' scheme was to obtain credit or debit card information from consumers, then enroll them in membership programs and charge them recurring membership fees without their authorization. (*See* proposed complaint ¶ 54-55, 75-77.) That is exactly what happened to Plaintiff. Like other consumers who were charged membership fees, Plaintiff did not "successfully resist" the fraud. If she had, she would not have been charged.

### B. The Proposed Complaint Pleads A Pattern Of Racketeering Activity.

The proposed complaint also pleads a pattern of racketeering activity. In *Brown*, the Sixth Circuit squarely rejected the argument that a plaintiff must allege she was subjected to at least two predicate acts to adequately plead this element of a RICO claim. "As long as the defendant engaged in a pattern of racketeering activity, and the plaintiff was injured by this pattern of activity, this suffices to state a claim under 18 U.S.C. § 1964(c); **nowhere does the statute require that the injury to each plaintiff must have independently consisted of a pattern of activity by the defendant.**" 546 F.3d at 353 (emphasis added). "Therefore, the district court erred in assessing the pattern requirement by counting the number of predicate acts alleged by each plaintiff." *Id.*

In fact, no predicate acts need be directed at the victims at all. In *Bridge*, the defendants carried out a scheme to acquire a disproportionate allocation of tax liens at auction. The pattern of racketeering consisted of the defendants' mailing of notices to property owners in connection with the tax lien acquisitions, as required by state law. The notices were not mailed to the plaintiffs, who competed with defendants in bidding for liens. Nevertheless, because the

6

mailings were in furtherance of the scheme, they constituted a pattern of mail fraud under RICO. *See* 128 S. Ct. at 2138-39.

Plaintiff's proposed complaint far exceeds the standards outlined by *Brown* and *Bridge*. Plaintiff alleges that she was subjected to at least ten specific predicate acts, including the February 2005 telephone solicitation of Plaintiff by an Influent telemarketer; Influent's electronic transmission of her debit card information to Defendants; Defendants' arrangement for the recurring membership charge to be automatically deducted from Plaintiff's bank account; each electronic transfer of a monthly membership charge from her account (totaling six in all); and the series of telephone calls Plaintiff made to Defendants after April 2005, during which she unsuccessfully sought cancellation of her Galleria membership and a full refund of all fees taken from her account. (*See* proposed complaint ¶ 86.)

### C. No Undue Delay, Bad Faith, Or Undue Prejudice To Defendants Arises From This Motion.

*Bridge* and *Brown* clarify the standards for pleading proximate cause and a pattern of racketeering activity, and confirm that amendment of Plaintiff's complaint to assert RICO claims would not be futile. No other ground for denying Plaintiff leave to amend exists. Neither undue delay, nor bad faith, nor dilatory motive, nor undue prejudice to Defendants can be shown.

Plaintiff previously sought leave to add RICO claims only after further investigation uncovered the basis for her allegations detailing the telemarketing scheme that Defendants operated through Influent. Plaintiff also requested leave at a relatively early stage of the litigation. No class had yet been certified; discovery was not completed; and no trial had been set. The same state of affairs exists now. Furthermore, Plaintiff does not seek to delay the proceedings by moving for leave to amend. On the contrary, Plaintiff wishes to add RICO claims so she can pursue those claims to judgment.

7

In addition, Defendants have been on notice since at least August 2007 (when Plaintiff filed her previous motion for leave to amend) that Plaintiff seeks to assert RICO claims. In opposing Plaintiff's earlier motion for leave to amend and responding to Plaintiff's appeal, Defendants showed themselves fully capable of developing and arguing the factual and legal issues raised by the proposed RICO claims.

## V. CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant this motion for leave to amend to add RICO claims, and authorize the filing of the accompanying proposed amended complaint.

Dated: December 4, 2009                     Respectfully submitted,


By:  */s/ Christina H.C. Sharp*

Daniel C. Girard (admitted *pro hac vice*)
A. J. De Bartolomeo (admitted *pro hac vice*)
Amanda M. Steiner (admitted *pro hac vice*)
Christina H.C. Sharp (admitted *pro hac vice*)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Gerald E. Martin (# 20193)
**BARRETT, JOHNSTON & PARSLEY**
217 Second Avenue North
Nashville, Tennessee 37201
Telephone: (615) 244-2202
Facsimile: (615) 252-3798

Attorneys for Individual and
Representative Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2009, a true and exact copy of the foregoing was served via the Court's Electronic Case Filing System on the following:

| | |
|---|---|
| Robert A. Horowitz<br>Toby S. Soli<br>**GREENBERG TRAURIG LLP**<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400<br>horowitzr@gtlaw.com<br>solit@gtlaw.com | Robert S. Patterson<br>**BRADLEY ARANT BOULT CUMMINGS LLP**<br>1600 Division Street, Suite 700<br>Nashville, Tennessee 37203<br>Telephone: (615) 244-2582<br>Facsimile: (615) 252-6380<br>bpatterson@babc.com |

*/s/ Christina H.C. Sharp*
CHRISTINA H.C. SHARP