UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| **MARGARET WIKE, on behalf of** | ) | |
| **herself and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:06-00204** |
| | ) | **Judge Campbell** |
| **VERTRUE, INC. f/k/a** | ) | |
| **MEMBERWORKS, INC.; ADAPTIVE** | ) | |
| **MARKETING LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

This matter is before the Court on a "Supplemented Motion for Summary Judgment Dismissing Plaintiff's RICO Claims" (Docket Entry No. 402) filed by Defendants Vertrue, Inc. ("Vertrue") and Adaptive Marketing, LLC ("Adaptive Marketing").[1] Plaintiff Margaret Wike ("Wike") has filed a response in opposition to the Motion (Docket No. 417), to which Defendants have replied. (Docket Entry No. 427).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a putative class action brought by Wike on behalf of herself and all similarly situated individuals who purportedly have been harmed by the allegedly unlawful and deceptive practices of Vertrue and its wholly-owned subsidiary, Adaptive Marketing. Specifically, Wike claims that Defendants, through their deceptive practices, duped her and others into enrolling in a worthless discount club and having the monthly fee for such enrollment charged to the enrollee's

---

[1]Save for some supplementation, this Motion is substantially the same as Defendants' "Motion for Summary Judgment Dismissing Plaintiff's RICO Claims" (Docket Entry No. 397) and, therefore, the initial motion for partial summary judgment will be deemed moot.

1

credit or debit card.

The genesis of Wike's claims arose after she called America Online ("AOL") on February 13, 2005, trying to help her friend obtain Internet service. She ultimately ended up with a Galleria membership which supposedly allowed her discounts on various consumer goods and services. This came about after the AOL technical support person indicated at the end of the call that, with Wike's permission, the call was going to be transferred so Wike could learn about receiving a "free" $50 Wal-Mart gift card. Defendants maintain Wike was told that the "free card" was available for customers who joined a special discount service, while Wike asserts that she thought the gift card was intended to be a "thank you" from AOL. Regardless, Wike's call was transferred to Influent, Inc. ("Influent"), a telemarketing service provider used by, but not affiliated with, Defendants.

The relationship between Influent and Defendants was governed by an inbound telemarketing agreement ("agreement") between Influent and Adaptive Marketing's predecessor, Memberworks Incoporated. Under the agreement, Influent telemarketers were to offer certain programs (including the Galleria membership at issue in this dispute) utilizing written scripts which had been approved by Defendants and were to read those approved scripts to potential customers verbatim. During the initial unrecorded portion of the call, the telemarketer was to advise the consumer, among other things, that "only after 30 days with your okay today, we'll automatically charge just $19.95 a month to the credit card you provide us, and then each month thereafter at the then-current membership rate." Additionally, under the agreement, Influent call-takers were supposed to verify each customer's express acceptance through recording the confirmation portion of the call.

When Wike's call was transferred, the Influent telemarketer did not follow the approved

script during the initial, unrecorded portion of the telemarketing solicitation. Instead, the telemarketer utilized a hard-copy script which had been provided to Influent's employees during training.[2] The script actually utilized did not disclose the recurring monthly membership fees until the recorded confirmation phase of the call.

The transcript of the recorded conversation of the call between Wike and the Influent telemarketer reads as follows:

> INFLUENT: Thank you Ms., Ms. Wike, all of the information Ma'am is kept strictly confidential and can only be accessed by authorized personnel. In order to get the materials out to you Ma'am including the information about how to claim your free $50 Wal-Mart card and to charge the $1 trial fee Ms. Wike I need to know whether you will be using a MasterCard or a Visa -- and you are using your Visa card for your bills correct?
>
> WIKE: Right
>
> INFLUENT: Can you now verify Ma'am expiration date, month and year?
>
> WIKE: Let me see. October of '07
>
> INFLUENT: That is October of 2007.
>
> WIKE: Uh-huh.
>
> INFLUENT: Now can you verify card number beginning with 4. It's 4.
>
> WIKE: [Credit card numbers read]
>
> INFLUENT: Expiration date is 10 of 2007.
>
> WIKE: Right.

---

[2]For present purposes, the parties agree that the telemarketer did not utilize the approved script during the unrecorded portion of the solicitation. Defendants insist that they had nothing to do with the hard copy script and that the same was provided to the telemarketers by Influent during training sessions. Wike asserts that there is a question as to who actually developed the script since Defendants' representatives observed, and participated in, training sessions and Influent's payments were keyed to successful solicitations. Ultimately this potential factual issue is not relevant to the determination of the presently pending motion for partial summary judgment.

3

> INFLUENT: Now Ms. Wike thank you for this information. Do remember only authorized personnel can access this information. We'll get the materials out to you in 2 to 3 business days at the address you provided today. Just to review, Galleria will automatically charge your card the $1 fee today and after the 30-day trial period, unless of course Ma'am you call to cancel, Galleria will continue membership and each month automatically charge the $19 dollars and 95 monthly fee to the card you provided. Ms. Wike, Ma'am, will it be alright to charge the $1 trial fee today and the monthly fee of $19 and 95 on your card after, of course, 30 days unless of course you cancel. O.K.?
>
> WIKE: O.K.
>
> INFLUENT: Great. You can start saving with Galleria in the next three business days or cancel to discontinue billing within thirty days Ma'am by calling 800 901-9606. That number and of course your membership kit will contain all information you need to claim your free $50 Wal-Mart card. Now as a special thank you Ma'am for reviewing and using Galleria you are also eligible to receive even more savings when you try another program called Simple Escapes. Simple Escapes, Ms. Wike, is a program that offers you a 20% savings at popular stores and restaurants including Kmart, Target, Blockbuster, Barnes and Noble, Burger King, KFC, Bennigans, and many others when you purchase gift cards through, that's through Simple Escapes. Ms. Wike, in all you can save over $2700 per year. Plus you can also get discounted movie tickets to nearly every theatre chain in the country. As well as get up to 50% off participating providers and other travel discounts. And those are just some of the great discounts. Ms. Wike, this absolutely for free, free of charge. Now, we can start your free 30-day trial period for Simple Escapes and you will be charged just $19 and 95 cents a month but it's only after your free trial period. Okay?
>
> WIKE: I'm not interested in that one.
>
> INFLUENT: Okay. That's fine Ms. Wike. Only your Galleria membership will be processed. I would like to thank you for agreeing to try Galleria. Again my name is Paula. If you have any questions Ma'am, please give Galleria a call at 800-901-9606. Thank you for your time. Have a nice evening Ma'am. Good-bye.

(Docket No. 242-3).

The initial $1 fee was taken from Wike's bank account in February 2005, as a payment to "galleriausa." Wike did not notice the fee at that time, and overlooked the $19.95 charge in March 2005, believing it to be for Pogo games. However, when the $19.95 fee appeared on her April 2005 statement, Wike claims she called the telephone number listed next to "galleriausa"

4

and was informed the fee was for coupons. Wike asserts she told the representative that she was not interested, that she wanted the charge removed, and that she wanted to cancel the Galleria membership. When another $19.95 charge for Galleria appeared on her May 2005 statement, Wike claims she again called to complain and was assured that her membership would be cancelled. Nevertheless, the charges continued over the next several months, and, when Wike called to complain, she was repeatedly assured that the problem would be rectified.

Wike filed this lawsuit in March 2006, at which point Defendants unilaterally credited Wike's bank account on April 4, 2006 for the charges that had been assessed to Wike's debit card. In her Second Amended Complaint, Wike brought claims against Defendants[3] for violation of the Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. §§ 1693-1693r; the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-101 *et seq.*; and for declaratory relief under 28 U.S.C. § 2201 *et seq.* She also brought state law claims for unjust enrichment and conversion.

Wike subsequently moved to amend her Complaint to add a Racketeer Influenced and Corrupt Organization Act ("RICO") claim (Docket No. 135). Magistrate Judge Brown denied that request (Docket No. 154) because Wike failed to allege reliance, and further because Wike only alleged one predicate act. Wike then sought *de novo* review (Docket Entry No. 158) of that Order. Upon review, Judge Echols entered an Order (Docket No. 211) affirming the Magistrate Judge's ruling. Wike then filed a Motion for Reconsideration or Alternatively for Entry of Final Judgment and Certification for Appeal (Docket No. 116) which Judge Echols denied (Docket No. 311). In doing so, Judge Echols recognized that the Supreme Court in <u>Bridge v. Phoenix Bond & Indemnity Co.</u>, 128 S.C.t 2131 (2008) had just held that a plaintiff asserting a RICO claim

---

[3]Influent was originally named as a Defendant. However, by Order entered July 3, 2008, the claims against it were dismissed. (Docket No. 308).

predicated on mail or wire fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations. Nevertheless, Wike's RICO claim failed because Wike could not show injury as required by 18 U.S.C. § 1964(c), nor could she establish more then one predicate act.

While the Motion for Reconsideration was pending, defendants filed a Motion for Summary Judgment. Judge Echols granted Defendants' Motion for Summary Judgment in its entirety. (Docket Nos. 312 & 313).[4]

With regard to the EFTA claim, Judge Echols ruled that it was untimely. As for Wike's state common law claims, Judge Echols wrote:

> . . . A reasonable jury could not find that Wike's Galleria membership was "unordered or unwanted." To the contrary, a reasonable jury would find, based on the recorded conversation, that Wike knowingly ordered the Galleria membership, gave her bank card information to the telemarketer to buy it, and rejected an offer to purchase a "Simple Escapes" membership saying, "I'm not interested in that one."
> 
> \*          \*          \*
> 
> The Court's analysis is not changed by the fact that Wike produced declarations of Influent telemarketers who stated they did not follow the written script precisely during the unrecorded portion of their marketing call and they believed Defendants' overall process was coercive. Even assuming the truth of these averments, the audio-recorded conversation between Wike and the telemarketer speaks for itself. At no time during the conversation did Wike interrupt the telemarketer and ask her to slow down, repeat, or clarify her statements, nor did Wike ever ask the telemarketer to explain to her how she could claim a free $50 Wal-Mart gift card with or without buying a Galleria membership. Wike did not ask any questions or indicate any confusion. Instead, she gave her express permission to the telemarketer to charge her account $1 that day and $19.95 per month thereafter for a one-year Galleria membership. Wike rejected the offer to buy a "Simple Escapes" membership, demonstrating that she knew what was being offered to her and she did not feel coerced to buy a membership she did not want. No reasonable jury could consider this taped

---

[4]Wike conceded that she could not pursue her TCPA claim and, thus, the only issues requiring resolution were her EFTA claim and her state law claims for conversion and unjust enrichment.

recording in combination with Wike's deposition testimony and find that the
Defendants were unjustly enriched. . . . .
    Wike's conversion claim is doomed for the same reasons.

(Docket No. 312 at 27-28, citation omitted). Final judgment was then entered in favor of Defendants and against Wike. (Docket No. 313).

Wike appealed, claiming that Judge Echols erred in dismissing her EFTA claim and in denying her motion for leave to amend her Complaint to add a RICO claim. However, Wike did not appeal from Judge Echols' Order granting summary judgment dismissing her state law claims.

On appeal, the Sixth Circuit reversed Judge Echols' ruling on the timeliness of Wike's EFTA claim, holding that the "pivotal event" for purposes of the one-year statute of limitations was "when the first recurring transfer took place, not when Vertrue arranged it." Wike v. Vertrue, Inc. 566 F.3d 590, 593 (6th Cir. 2009). As for the RICO claim, the Sixth Circuit wrote:

> . . . Since the district court issued its decision, our court has decided one case, Brown v. Cassens Transp. Co., 546 F.3d 347 (6th Cir. 2008), that bears on this question. And just before the district court's decision, the Supreme Court announced another decision, Bridge v. Phoenix Bond & Indem. Co., --- U.S. ----, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008), that bears on this question. Because we have decided that Wike has a nontime-barred EFTA claim, because we must return this case to the district court in any event and because most leave-to-amend decisions are largely discretionary, it makes sense to allow the district court to decide at this point whether to allow Wike to add a RICO claim.

Id. at 596.[5]

Upon remand, Wike filed a Renewed Motion for Leave to Amend to add a RICO claim (Docket No. 337). Magistrate Judge Brown again denied Wike's request because, in his opinion, the amendment would be futile inasmuch as Wike could not show reliance or harm (Docket No.

---

[5]While neither of the cases cited by the Sixth Circuit had been decided at the time of the initial rulings on the motion to amend, Judge Echols did in fact consider Bridges when he denied Wike's Motion for Reconsideration.

7

557). Wike then requested *de novo* review of Magistrate Judge Brown's decision. After hearing from the parties, the Court granted Wike leave to amend her complaint because leave to amend should be freely given and it did not appear that amending the complaint necessarily would be futile. Nevertheless, the Court specifically noted that the possibility existed that the RICO claims would not survive a motion for summary judgment. (Docket No. 391 at 32).

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the nonmoving party. Meyers v. Columbia/HCA Healthcare Corp., 341 F.3d 461, 466 (6th Cir. 2003); Hopson v. DaimlerChrysler Corp., 306 F.3d 427, 432 (6th Cir. 2002).

## III. APPLICATION OF LAW

Defendants argue that their Motion for Summary Judgment on the RICO claims should be granted because (1) Wike is precluded from relitigating the issue of whether she knowingly and expressly authorized the recurring charge at issue, either based upon the law of the case doctrine or collateral estoppel; (2) Wike cannot show she was injured "by reason of" the alleged wire fraud; and (3) Influent, not Defendants, was responsible for any alleged wire fraud. Wike argues Defendants are not entitled to summary judgment on any of those grounds and, with respect to the last, asserts that further discovery is necessary because such discovery (Wike believes) would show, among other things, that Defendants knew Influent was not utilizing the approved scripts, or turned a blind eye to the practice. Because the Court finds that Wike is bound by Judge

8

Echols' determination that a reasonable jury could only find that she acted knowingly and, thus, Wike's RICO claim failed as a matter of law, the Court does not address Defendants' alleged control over Influent's practices or the supposed need for further discovery on that issue.

"'As most commonly defined, [the doctrine of the law of the case] posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 815-16 (1988) (brackets in original) (quoting, Arizona v. California, 460 U.S. 605, 618 (1983)). Further, "[u]nder the doctrine of law of the case, findings made at one point of the litigation become the law of the case for subsequent stages of that same litigation." United States v. Moored, 38 F.3d 1419, 1421 (6th Cir. 1994). "The doctrine also bars challenges to a decision made at a previous stage of the litigation which could have been challenged in a prior appeal, but were not." Rouse v. DaimlerChrysler Corp., 300 F.3d 711, 715 (6th Cir. 2002).

Applying the law of the case doctrine to a court's prior ruling is a discretionary tool meant to promote judicial efficiency. Omimex Energy, Inc. v. Blohm, 2010 WL 1431320 at *8 (6th Cir. 2010). "Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is 'to be exercised very sparingly, and only under extraordinary conditions.'" In re Kenneth Allen Knight Trust, 303 F.3d 671, 678 (6th Cir. 2002)(citation omitted). Extraordinary circumstances which allow for reconsideration of an issue previously decided include where substantially different evidence is presented, there is subsequent contrary and controlling authority, or where the underlying determination is clearly erroneous and would work a manifest injustice. United States v. Rayborn, 495 F.3d 328, 337 (6th Cir. 2007).

In this case, Defendants argue that Judge Echols' determination that a reasonable jury could only find that Wike knowingly agreed to the Galleria membership dooms Wike's RICO

9

claim. This Court agrees.

To prevail on a civil RICO claim, a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496 (1985)(footnote omitted). However, "[t]he plaintiff only has standing if, and can only recover to the extent that, [s]he has been injured in h[er] business or property by the conduct constituting the violation." Id. In other words, "'[a] defendant who violates section 1962 is not liable . . . to everyone he might have injured by other conduct, nor is the defendant liable to those who have not been injured.'" Id. at 496-97 (citation omitted). Rather, a plaintiff may recover under Section 1964(c) only by showing that "the alleged RICO violation was the proximate cause of plaintiff's injury." Anza v. Ideal Steel Supply Corp., 547 F.3d 451, 453 (2006); accord, Holmes v. Securities Investor Protection Corp., 503 U.S. 528, 568 (1992).

Here, when Wike's allegations are read broadly, she is claiming that Defendants engaged in a scheme with Influent to lure unsuspecting individuals into purchasing what amounted to worthless club memberships through the use of both authorized and unauthorized coercive scripts. The essence of her RICO claim is that such pressurized sales tactics achieved Defendants' desired results – more memberships in worthless clubs. While that may be true with respect to some customers, the same cannot be said about Wike in light of Judge Echols' rulings.

Judge Echols specifically determined, based upon the summary judgment record before him, that no reasonable jury could find that Wike did not expressly agree to allow her debit card to be charged for the Galleria membership, that the sales practices of Defendants were not coercive in regard to Wike, and that Wike acted knowingly and without confusion in purchasing the Galleria membership. (Docket Entry No. 312 at 27-28). Wike did not appeal the dismissal of her state law claims or the underlying determination that she acted knowingly, and she is now

10

stuck with that determination.  See, JGR, Inc. v. Thomasville Furniture Indus. Inc., 550 F.3d 529, 532 (6th Cir. 2008)(citation omitted)(a party that fails to appeal an issue waives the right to relitigate the issue on remand).

While Judge Echols' ruling was made in the context of Wike's state law claims for conversion and unjust enrichment, Wike offers no compelling reasons why the conclusion relating to her knowledge and agreement, and the lack of coercion, would not apply with equal force to her RICO claim.  It is not as if Wike is suggesting that her deposition testimony would be different or the transcribed telemarketing pitch would change if the question regarding Wike's knowing acceptance of the Galleria membership was presented in the context of her RICO claim.  Notwithstanding whatever gloss Wike might want to place on it, the transcript is the best evidence of what Wike agreed to.  See, Scott v. Harris, 550 U.S. 372, 380 (2007)(where authenticity of recording is not challenged, it is the best evidence of the underlying facts).

In response to Defendants' motion, Wike implicitly admits that she "okayed" the charges during her call with Influent (Docket No. 19 at 13) and effectively concedes that Judge Echols found that she knowingly agreed to the membership fees.  (Id. at 16).  Nevertheless, she maintains that the law of the case doctrine does not apply because, unlike her conversion and unjust enrichment claims, her RICO claim does not turn on whether she "agreed" to the charges, but rather on whether she and other consumers were direct victims of a scheme to defraud conducted by Defendant through Influent.  In this regard, Wike notes that a RICO claim does not incorporate the elements of common law fraud, nor is reliance an element of a RICO claim.  Rather, the focus is on Defendants' conduct, not the state of mind of the victim, and these issues were not decided by Judge Echols.

It is true, as Wike asserts, that the Supreme Court in Bridge indicated RICO does not use

11

Case 3:06-cv-00204 Document 429    Filed 08/30/10 Page 11 of 14 PageID #: 13140

the term "fraud," and that "'one can conduct the affairs of a qualifying enterprise through a pattern of [predicate] acts without anyone relying on a fraudulent misrepresentation.'" (Docket No. 417 at 14, quoting, Bridge, 128 S.Ct. at 2138). However, the Supreme Court in Bridge was not writing on a tabula rasa, and that decision must be read in context. As one court has explained:

> To be sure, Bridge rejected the argument that a plaintiff who brings a mail [or wire] fraud claim must demonstrate that it relied on the defendant's misrepresentations to establish § 1964(c)'s proximate cause requirement. . . . Bridge, however, did not disturb Anza's and Holmes's holdings that the alleged violation must be both the "but for" and the proximate cause of the injury to demonstrate that the injury was "by reason of" a RICO violation. . . . Rather, in Bridge, the Supreme Court picked up where Anza left off. The Anza Court had declined to address the defendants' alternative argument that a RICO claim predicated on mail or wire fraud requires proof that the plaintiff relied on the defendant's misrepresentations. . . . Hence, Anza's and Holmes's principles still must be satisfied in that a plaintiff must demonstrate that "'the alleged violation led directly to the plaintiff's injuries.'"

Hope For Families & Community Service, Inc. v. Warren, 2010 WL 2629408 at *40 (M.D. Ala. 2010)(internal citations omitted).

Simply put, Bridge "does not expressly or *sub silentio* overrule the long line of cases that interpret RICO to require that the alleged fraudulent conduct be the direct cause of the plaintiff's injury." Myfreemedicine.com v. Hasler, 2009 WL 1025526 at *14 (D. Me. 2009). Indeed, the Supreme Court in Hemi Group LLC v. City of New York, 130 S.Ct. 983, 994 (2010) recently held that "[t]his Court has interpreted RICO broadly, consistent with its terms, but we have also held that its reach is limited by the 'requirement of a direct causal connection' between the predicate wrong and the harm." Id. at 994 (quoting, Anza, 547 U.S. at 460). Thus, where injuries are "not caused directly by the alleged fraud," they are "not caused by reason of" it as required by Section 1964(c). Id.

12

Here, Wike's generalized complaint about the alleged fraudulent conduct of utilizing scripted and unscripted solicitations which allegedly coerced individuals to purchase memberships cannot be squared with Judge Echols' explicit determination that a reasonable jury could only find that Wike acted knowingly and was not coerced when she agreed to the Galleria membership. While Defendants tactics may in fact be the direct cause of others joining Defendants' membership clubs, and while Wike purports to represent others who were, in fact, so coerced, "[t]he Article III standing requirements apply equally to class actions" and Wike, as the class representative, must show "an individual personal injury in order to seek relief on behalf of h[er]self or any other member of the class." Sutton v. St. Jude Medical S.C., Inc., 419 F.3d 568, 570 (6th Cir. 2005). In light of Judge Echols' ruling, Wike cannot show an injury by reason of the alleged wire fraud scheme perpetrated by Defendants and she offers no compelling reasons why the Court should ignore the conclusion reached by Judge Echols and not challenged on appeal.

In arriving at its conclusion, the Court recognizes that the mandate rule is a corollary to the law of the case doctrine. "The basic tenet of the mandate rule is that the district court is bound to the scope of the remand issued by the court of appeals." United States v. Campbell, 168 F.3d 263, 265 (6th Cir. 1999). "The trial court is required to 'implement both the letter and the spirit' of the appellate court's mandate, 'taking into account the appellate court's opinion and the circumstances it embraces.'" Westside Mothers v. Olszewski, 454 F.3d 532, 538 (6th Cir. 2006)(citation omitted).

Wike argues that "[t]he Sixth Circuit remanded the action for further proceedings on Plaintiff's RICO claim" and that "[t]he summary rejection of Plaintiff's RICO claim would be contrary to the letter and spirit of the Sixth Circuit's order in violation of the mandate rule." (Docket Entry No. 417 at 17). Wike reads the mandate too broadly.

13

The mandate from the Sixth Circuit in regard to the RICO claim was clear and straightforward: the Court was to reconsider whether to allow Wike to amend her Complaint to add a RICO claim in light of the recent decision by the Supreme Court in <u>Bridge</u> and the Sixth Circuit in <u>Brown</u>. The Sixth Circuit in no way intimated that Wike's RICO claim had merit, that she could establish the elements of such a claim, or that the claim could survive a motion for summary judgment based upon explicit determinations which she chose not to challenge on appeal.

This Court fulfilled the mandate by allowing Wike to amend her Complaint, but, in doing so, explicitly noted that Wike's RICO claim could still be subject to dismissal on the merits. The Court has already indicated its view that, notwithstanding <u>Bridge</u>, Wike's RICO claim fails because she cannot show injury "as a result of" the alleged scheme, and the Sixth Circuit's decision in <u>Brown</u>, which merely applied <u>Bridge</u> in the context of the sufficiency of *pleading* proximate cause, does not change that conclusion.

## IV. **CONCLUSION**

On the basis of the foregoing, Defendants' "Supplemented Motion for Summary Judgment Dismissing Plaintiff's RICO Claims" (Docket No. 402) will be granted and Wike's RICO claim will be dismissed. Defendants' initial "Motion for Summary Judgment Dismissing Plaintiff's RICO Claims" (Docket No. 397) will be denied as moot.

_____
Todd Campbell
United States District Judge